$4400

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

CONNECT AMERICA HOLDINGS, LLC
2193 West Chester Pike
Broomall, PA 19008,

CONNECTAMERICA.COM, LLC
2193 West Chester Pike
Broomall, PA 19008,

and

KENNETH GROSS
2193 West Chester Pike
Broomall, PA 19008,

        Plaintiffs,

     v.

ARCH INSURANCE COMPANY
2345 Grand Blvd.
Suite 900
Kansas City, MO 64108,

        Defendant.

Civil Action No.

## 14   4784

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiffs, Connect America Holdings, LLC ("CA Holdings"), ConnectAmerica.com, LLC ("Connect America") and Kenneth Gross ("Gross") (collectively, "Plaintiffs"), by and through their counsel, bring this Complaint against Arch Insurance Company ("Arch"), and in support thereof, allege as follows:

## NATURE OF THE ACTION

1.    This is a civil action seeking damages arising out of Arch's breach of its contractual obligations to pay losses under the terms and conditions of a directors and officers/professional liability policy for private company management liability and crime

insurance, declaratory judgment relating to the coverage provided by Arch's policy, and damages arising out of Arch's bad faith conduct under the policy.

## PARTIES

2.     CA Holdings is a Delaware limited liability company with its principal place of business in the County of Delaware, Pennsylvania.

3.     Connect America is a Delaware limited liability company with its principal place of business in the County of Delaware, Pennsylvania.

4.     Gross is an individual who resides in the County of Delaware, Pennsylvania.

5.     Arch is a Missouri corporation with its principal place of business in Kansas City, Missouri, and transacts business in the County of Delaware, Pennsylvania, among other locations across the United States.

## JURISDICTION AND VENUE

6.     Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(a). The citizenship of the parties is completely diverse, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as Plaintiffs reside and are headquartered in this District and a substantial part of the events giving rise to the claims occurred in this District.

## GENERAL ALLEGATIONS

### The Insurance Policy

8.     Arch is an insurance company that provides, among other things, commercial insurance policies covering a broad range of potential risks.

- 2 -

9.    Arch has a history of providing officers, directors and organizational insurance coverage to CA Holdings and its subsidiaries and affiliates since at least 2010.

10.    CA Holdings purchased insurance policy PCD0042010-02 from Arch, with a policy period of December 24, 2012 to December 24, 2013 (the "Policy") (attached hereto as Exh. 1).  The Policy is a canopy policy for private company management liability and crime insurance.

11.    The Policy is effective for Claims first made during the Policy Period of December 24, 2012 to December 24, 2013 and reported in accordance with the Policy's terms.

12.    The Policy contains a Prior Wrongful Acts Date of December 24, 2010, which provides that Wrongful Acts which occurred from and after December 24, 2010 shall be covered pursuant to Endorsement No. 11 of the Policy.

13.    The Directors, Officers, & Organization Liability Coverage Part ("D&O Part") of the Policy provides a $5,000,000 limit of liability, subject to a deductible of $20,000 for each claim under Insuring Agreement B.

14.    Insuring Agreement A of the D&O Part of the Policy, provides that "the Insurer shall pay Non-Indemnifiable Loss on behalf of the Insured Persons resulting from a Claim first made against the Insured Persons during the Policy Period or Extended Reporting Period, if applicable, for a Wrongful Act by the Insured Persons." The "Insurer" is listed in the Policy as Arch.  "Insured Persons" are defined in the D&O Part of the Policy as any "Executive or Employee."

15.    Insuring Agreement B of the D&O Part of the Policy, provides that:

> The Insurer shall pay Loss on behalf of an Insured Organization that such Insured Organization has, to the extent permitted or required by law, indemnified the Insured Persons resulting from a Claim first made against the Insured Persons during the Policy

- 3 -

> Period or Extended Reporting Period, if applicable, for a Wrongful
> Act by the Insured Persons.

An "Insured Organization" is defined in the Policy as CA Holdings and its subsidiaries.

16.     Insuring Agreement C of the D&O Part of the Policy provides that "the Insurer shall pay Loss on behalf of an Insured Organization resulting from a Claim first made against such Insured Organization during the Policy Period or Extended Reporting Period, if applicable, for a Wrongful Act by an Insured Organization."

17.     The D&O Part of the Policy insured Plaintiffs against, among other things:

> a.     Act[s], error[s], omission[s], misstatement[s], misleading statement[s], neglect or breach of duty by Insured Persons in their capacity as such or in an Outside Capacity or, with respect to Insuring Agreement C, by an Insured Organization; or
>
> b.     matter[s] claimed against an Insured Person solely by reason of their serving in such capacity, including service in an Outside Capacity.

"Outside Capacity" is defined in the D&O Part of the Policy as "service by an Insured Person as director, officer, trustee, regent, governor or equivalent executive of an Outside Organization with the knowledge and consent, or at the request of an Insured Organization."

18.     Pursuant to the terms of the Policy, Arch is obligated to honor and pay claims within the scope of the D&O Part of the Policy.

19.     Gross is the Chairman and a manager of CA Holdings and Connect America. Therefore, Gross constitutes an Insured Person under the Policy and is eligible for coverage.

20.     CA Holdings is named as an Insured Organization under the Policy and is eligible for coverage.

21.     Connect America is an Insured Organization as a subsidiary of CA Holdings eligible for coverage under the Policy.

- 4 -

## The 2013 Robo Calling and False Advertising Claims

22.     On or about May 13, 2013, Life Alert Emergency Response, Inc. ("Life Alert") filed suit (the "2013 Lawsuit") against Connect America, Gross and several other entities and individuals – Lifewatch, Inc. ("Lifewatch"), Evan Sirlin ("Sirlin"), Live Agent Response 1, LLC ("Live Agent"), Greg Small and Trilogy Investment, LLC ("Trilogy"), asserting claims for:  (1) violation of 15 U.S.C. §1125(a); (2) unfair competition; (3) trademark infringement; and (4) trademark dilution.

23.     On August 27, 2013, Life Alert amended the complaint by filing its First Amended Complaint (the "Amended Complaint") against Connect America, Gross, Lifewatch, Sirlin, Live Agent, Small, Trilogy, Michael Hilgar, and Worldwide Info Services, Inc., asserting claims for:   (1) violation of 15 U.S.C. §1125(a); (2) unfair competition; (3) trademark infringement; (4) trademark dilution; and (5) false advertising.

24.     The Amended Complaint alleged that Connect America and Gross engaged in wrongful robo calling operations (the "2013 Robo Calling Claims"), beginning in August of 2012, through the following alleged actions:

      a.    Targeting seniors with unsolicited phone calls made with recorded messages (commonly known as "robo-calling"), including phone calls to persons on government "Do Not Call" lists;

      b.    Hiring salespersons with advertisements referencing Life Alert's trademark "I've Fallen and I Can't Get Up!";

      c.    Providing salespersons with telemarketing scripts that references Life Alert's trademark "I've Fallen and I Can't Get Up!";

      d.    Having salespersons call potential customers for personal emergency response systems and falsely stating that they work with "Life Alert" or with the "I've Fallen and I Can't Get Up!" company [*i.e.*, Life Alert];

      e.    Using false caller identifications in connection with phone calls to potential customers for personal emergency response systems;

f.     Leading customers to believe they are Life Alert and not disclosing that Connect America and/or LifeWatch were the true personal emergency response companies with which the salespersons were affiliated, until after the solicited person(s) purchased emergency responses [sic] services; and

g.     Using "robo-calls" to intentionally contact Life Alert's existing customers and falsely indicating to them that the phone call concerned updating their Life Alert equipment. However, when the Life Alert customers requested the updated Life Alert equipment, they received Connect America equipment instead.

25.     The Amended Complaint also alleged that Connect America and Gross had engaged in false and misleading advertising for its emergency response products and services. Specifically, Life Alert alleged that Connect America and Gross made false claims in print and writings that Connect America had been in business longer and had more experience than in fact it had (the "2013 False Advertising Claim").

**Plaintiffs Seek Coverage from Arch for the**
**2013 Robo Calling and False Advertising Claims**

26.     On May 29, 2013, pursuant to the terms of the Policy, CA Holdings provided timely notice to Arch of the Complaint (the "Request for Coverage"), and advised Arch that it had a duty to defend Connect America and Gross in the 2013 lawsuit.

27.     Over the next several months, there were a number of follow-up communications sent by or on behalf of Plaintiffs to Arch to request coverage, including coverage for the claims alleged in the Amended Complaint.

28.     As an Insured Person under the terms of the Policy, Gross is entitled to coverage under Insuring Agreement A with respect to the 2013 Robo Calling and False Advertising Claims alleged against him.

29.     As a named Insured Organization, CA Holdings and Connect America are entitled to be reimbursed for their indemnification of any Insured Persons, such as Gross, with respect to

the 2013 Robo Calling and False Advertising Claims alleged against Gross, pursuant to Insuring Agreement B.

30.     As an Insured Organization, Connect America is entitled to coverage under Insuring Agreement C with respect to the 2013 False Advertising Claims alleged against it.

31.     On June 11, 2013, Arch responded to the Request for Coverage and indicated that, Arch would provide coverage for Gross, under a reservation of rights, pursuant to Insuring Agreement B of the D&O Part of the Policy.  However, Arch indicated that coverage for Connect America would not be available due to Section 4, Exclusion B.5. of the D&O Part of the Policy, which provided that the Insurer shall not pay Loss for any Claim against the Insured Organization:

> arising from, based upon, or attributable to infringement of any intellectual property rights, including, without limitation, copyrights, patents, trademarks, trade names, trade dress, service marks, or trade secrets;

### Arch Waives Lack of Consent as a Coverage Defense to a Settlement of the 2013 Robo Calling and False Advertising Claims

32.     In the fall of 2013, Life Alert and Plaintiffs entered into settlement negotiations pertaining to the 2013 Robo Calling and False Advertising Claims.

33.     On January 21, 2014, Connect America requested consent from Arch to enter into a settlement agreement with Life Alert, pursuant to Section 8.C. of the General Terms and Conditions Part, as amended by Endorsement No. 1 of the Policy.

34.     On January 23, 2014, Arch agreed to waive lack of consent as a coverage defense in connection with the proposed settlement agreement.

35.     On January 27, 2014, Life Alert and Connect America entered into a settlement agreement that fully resolved the 2013 Robo Calling and False Advertising Claims between the parties (the "Settlement Agreement").

- 7 -

## Arch's Bad Faith Refusal to Provide Coverage

36.     On February 6, 2014, Arch notified Connect America for the first time that it would not provide any coverage under the Policy for the 2013 Robo Calling and False Advertising Claims at all.

37.     Despite the fact that the 2013 Robo Calling Claims alleged against Gross fell under Insuring Agreement A of the D&O Part of the Policy, and Insuring Agreement B of the D&O Part of the Policy as to any indemnification of Gross by CA Holdings and/or Connect America, Arch improperly denied and refused coverage of such claims.

38.     Despite the fact that the 2013 False Advertising Claim alleged against Gross fell under Insurance Agreement A of the D&O Part of the Policy, and Insuring Agreement B of the D&O Part of the Policy as to any indemnification of Gross by CA Holdings and/or Connect America, Arch wrongfully denied and refused coverage of such claim.

39.     Despite the fact that the 2013 False Advertising Claim alleged against Connect America fell under Insuring Agreement C of the D&O Part of the Policy, Arch wrongfully denied and refused coverage of such claim.

40.     Importantly, Arch did not deny coverage until after Connect America and Gross advised Arch of the settlement of the 2013 Robo Calling and False Advertising Claims, even though it had possessed all of the information upon which it denied coverage for some period of time.

41.     Connect America and Gross have repeatedly explained why the denial of coverage by Arch is improper and inappropriate as to the 2013 Robo Calling Claims and 2013 False Advertising Claim in a series of written correspondence, but Arch has refused to reconsider its denial.

42.     Arch denied coverage for the following reasons:

    a.    Connect America is not entitled to coverage under Section 4, Exclusion B.5 of Insuring Agreement B of the D&O Part of the Policy for claims "arising from, based upon, or attributable to infringement of any intellectual property rights, including, without limitation, copyrights, patents, trademarks, trade names, trade dress, service marks, or trade secrets";

    b.    Connect America and Gross purportedly are precluded from coverage under the exclusion set forth in Endorsement No. 11 to the Policy (the "Interrelated Wrongful Act exclusion") because the wrongful acts alleged in the Amended Complaint are interrelated to wrongful acts set forth in a 2004 cease and desist letter and past litigation between Connect America and Life Alert in 2008/2009; and

    c.    Connect America and Gross purportedly failed to obtain consent from Arch to enter into the settlement in breach of Section 8.C. of the General Terms and Conditions Part of the Policy, as amended by Endorsement No. 1.

43.     Each of Arch's reasons for its denial of coverage to Plaintiffs lacks merit.

44.     Section 4, Exclusion B.5. of the D&O Part of the Policy does not apply to the 2013 False Advertising Claim as to any of the Plaintiffs.

45.     Section 4, Exclusion B.5. of the D&O Part of the Policy does not apply to the 2013 Robo Calling and False Advertising Claims as to Gross because he is not an Insured Organization.

46.     Arch's position that Plaintiffs are precluded from coverage under the Interrelated Wrongful Acts exclusion because the wrongful acts alleged in the Amended Complaint are interrelated to wrongful acts set forth in a 2004 cease and desist letter and past litigation between Connect America and Life Alert in 2008/2009 (the "2004 Internet Posting Claims") is without merit as well.

47.     Arch asserted erroneously that the 2013 Robo Calling and False Advertising Claims were first made when Life Alert raised the 2004 Internet Posting Claims and therefore excluded under the Interrelated Wrongful Acts exclusion.

48.     The 2004 Internet Posting Claims alleged that Connect America violated Life Alert's rights in certain trademarked phrases by specific instances of posting such phrases on the internet and in response to specific instances of inquiries received on their "1-800" number.

49.     The 2004 Internet Posting Claims were settled, with Connect America agreeing to, among other things, enter a permanent injunction prohibiting Connect America from conducting any of the activities complained of in the 2004 Internet Posting Claims.

50.     The 2004 Internet Posting Claims and the 2013 Robo Calling and False Advertising Claims are not interrelated.  For example:

        a.     The 2004 Internet Posting Claims only pertained to supposed violations of Life Alert's alleged trademarked phrases, through internet postings, whereas the 2013 False Advertising Claims alleged false statements as to Connect America's length of time in business and experience;

        b.     The 2004 Internet Posting Claims focused on internet postings and responses to inquiries made by callers to a "1-800" number, whereas the 2013 Robo Calling Claims focused on an alleged "robo calling phone scam" supposedly conducted by Connect America and Gross whereby they allegedly called consumers and Life Alert customers with automated pre-recorded calls using telemarketing sales scripts allegedly creating the impression that they were Life Alert when they were not;

        c.     The 2013 Robo Calling and False Advertising Claims were not based upon any of the same events, acts and/or course of events which were alleged to have occurred in the 2004 Cease and Desist Letter and/or the 2008/2009 Litigation; and

        d.     The 2013 Robo Calling and False Advertising Claims tellingly did not allege a violation of the permanent injunction which prohibited Connect America from conducting any of the activities complained of in the 2004 Cease and Desist Letter and/or the 2008/2009 Litigation.

51.     Arch's denial of coverage of the 2013 Robo Calling and False Advertising Claims pursuant to the Interrelated Wrongful Acts exclusion was nothing more than a false pretext, concocted in bad faith by Arch to attempt to avoid providing any coverage to Plaintiffs with respect to the 2013 Robo Calling and False Advertising Claims, despite Arch's obligation to do so.

52.     Arch even alleged that Connect America and Gross violated the terms of the Policy by failing to seek Arch's consent before entering into an agreement with Life Alert to settle the 2013 Robo Calling and False Advertising Claims. But, Connect America and Gross, in fact, expressly requested consent from Arch to enter into the settlement agreement and Arch expressly agreed to waive any lack of consent to the settlement agreement as a coverage defense in connection with the proposed settlement agreement.

53.     Arch's attempt to raise this waived defense in follow-up communications relating to the Request for Coverage is further evidence of Arch's bad faith attempt to avoid providing coverage to Plaintiffs with respect to the 2013 Robo Calling and False Advertising Claims, pursuant to the terms of the Policy.

54.     Connect America and Gross have fully complied with all conditions precedent to obtaining the coverage available under the Arch policy.

## COUNT I- BREACH OF INSURANCE CONTRACT

55.     Plaintiffs hereby incorporate by reference and reallege Paragraphs 1 through 54 of this Complaint as if fully restated herein.

56.     Arch has breached the terms of the Policy by failing to provide coverage to the Plaintiffs and pay for any of their losses as a result of the 2013 Robo Calling and False Advertising Claims.

- 11 -

57.    Based upon the clear and unambiguous language of the Policy, the 2013 Robo Calling and False Advertising Claims are covered by the terms of the Policy.

58.    Plaintiffs have complied with all provisions of the Policy, including but not limiting to timely paying the entire premium due on the Policy and providing timely notice of its claims under the Policy.

59.    Arch has failed to perform its obligations under the terms of the Policy and has stated that it will not do so.  Arch has done so knowing that it would impair and interfere with Plaintiffs' business operations, expectancies and relationships.

60.    Implied in every insurance policy is a covenant that the insurance company will act in good faith and deal fairly with its insured, that the insurance company will do nothing to interfere with the right to receive benefits under the policy, that the insurance company will give at least as much consideration to the interests of the insured as it does its own interests, that the insurance company will exercise diligence, good faith and fidelity in safeguarding the insured's interests, that it will deal ethically with the insured and will fairly and adequately inform the insured with respect to the nature and scope of its insurance coverage.

61.    Arch, in breach of the covenant of good faith and fair dealing, has refused to comply with the coverage provided under the Policy by refusing to pay coverage for reasons that are unsubstantiated under the terms and conditions of the Policy.  Arch has done so for the purpose of consciously withholding policy benefits in bad faith and placing its own interests above those of its insured's for the purpose of utilizing money that should have been paid under the terms and conditions of the Policy.

- 12 -

62.     As a direct, proximate, natural and foreseeable consequence of the foregoing, Plaintiffs have suffered damages for which they are entitled to recover, including, but not limited to, compensatory damages, consequential damages, interest, costs and attorney fees.

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

A.     Awarding compensatory damages in favor of Plaintiffs and against Arch in the amount of $5,000,000 less the $20,000 deductible;

B.     Awarding consequential damages in favor of Plaintiffs and against Arch in an amount in excess of $75,000;

C.     Awarding interest, costs and attorney fees in favor of Plaintiffs and against Arch; and

D.     Granting such other and further relief as the Court deems just and appropriate.

## COUNT II – DECLARATORY JUDGMENT

63.     Plaintiffs hereby incorporate by reference and reallege Paragraphs 1 through 54 of this Complaint as if fully restated herein.

64.     Plaintiffs have an actual and present controversy with Arch regarding the interpretation and application of its Policy, including the three provisions that Arch has relied on to deny coverage. Specifically, Plaintiffs and Arch dispute how the following provisions should be interpreted and applied:  Section 4, Exclusion B.5. of Insuring Agreement B of the D&O Policy; the Interrelated Wrongful Acts exclusion; and Section 8.C. of the General Terms and Conditions Part of the Policy, as amended by Endorsement No. 1.  Plaintiffs seek declaratory relief to resolve this dispute.

65.     Plaintiffs are entitled to have the Policy and all endorsements interpreted in a reasonable manner that maximizes its insurance coverage.

66. Based on its conduct to date, it is clear that Arch disputes the proper construction of the Policy, including Section 4, Exclusion B.5. of Insuring Agreement B of the D&O Policy, the Interrelated Wrongful Acts exclusion, and Section 8.C. of the General Terms and Conditions Part of the Policy, as amended by Endorsement No. 1. Accordingly, it is necessary and proper for the Court to declare the rights and obligations of the parties under the Policy.

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

A. Declaring that Connect America and Gross are both entitled to full coverage for the 2013 Robo Calling and False Advertising Claims;

B. Declaring that Arch does not have a "contractual right" to deny coverage under the Policy for the 2013 Robo Calling and False Advertising Claims;

C. Declaring the rights of the parties under the terms and conditions of the Policy and the facts and circumstances of this case;

D. Declaring that the Plaintiffs are entitled to attorneys fees and costs in connection with this matter; and

E. Granting such other and further relief as the Court finds just and equitable.

## COUNT III - BAD FAITH IN VIOLATION
## OF 42 PA. CONS. STAT. ANN. § 8371

67. Plaintiffs hereby incorporate by reference and reallege Paragraphs 1 through 54 of this Complaint as if fully restated herein.

68. Pursuant to the Policy, Arch agreed under the terms and conditions of the Policy to provide insurance to Plaintiffs as Insured persons and Insured Organizations for the type of claims asserted against Plaintiffs in the 2013 Lawsuit.

69. Arch's conduct as described above and set forth below constitutes bad faith, which is expressly prohibited by 42 Pa. C.S.A. §8371.

- 14 -

70.     Arch has repeatedly violated and continues to violate the Pennsylvania Unfair Insurance Practices Act, 40 P.S. §1171 et seq.  Those violations of statute are evidence of Arch's bad faith.

71.     An insurance company, such as Arch, has a duty to act with the utmost good faith towards its policyholders.

72.     Arch, in tortious violation of Pennsylvania's bad faith statute, has refused to acknowledge the coverage required to be provided under the Policy for three purported reasons, all of which are pretextual and meritless under the terms and conditions of the Policy.  Arch has done so, in order to consciously withhold Policy benefits and place its own interests above those of its insured's.

73.     Plaintiffs are informed and believe, and on that basis allege, that Arch's systematic actions and failures to act were done purposefully, intentionally, maliciously, and/or with reckless disregard of its obligations under the Policy, that Arch's conduct was in bad faith and intended to cause injury to Plaintiffs and deprive them of its benefits under the Policy, and that Arch's actions and inactions have been taken with willful and conscious disregard of Plaintiffs' rights and the consequences of these actions on Plaintiffs, and with the deliberate intent to vex, injure and annoy Plaintiffs and advance Arch's own pecuniary interest.

74.     Among other acts or failure to act, Arch has acted in bad faith with respect to Plaintiffs by:

        a.     giving the impression that Arch would at least cover losses relating to Gross but then denying coverage as to all Plaintiffs, including Gross, soon after Plaintiffs entered into the Settlement Agreement;

        b.     misrepresenting pertinent facts or policy provisions relating to coverages at issue, including but not limited to:

        (i)    relying on a defense to coverage that Arch already agreed to waive in writing;

- 15 -

(ii)     relying on the Interrelated Wrongful Acts exclusion even though the 2004 Internet Posting Claims and 2013 Robo Calling and False Advertising Claims took place years apart, involved separate parties and separate claims, and a claim was never asserted against Plaintiffs for violating the permanent injunction prohibiting Connect America from conducting any of the activities complained of in the 2004 Cease and Desist Letter and/or the 2008/2009 Litigation;

(iii)    relying on Section 4, Exclusion B.5. of Insuring Agreement B of the D&O Part of the Policy to deny coverage, even though that provision does not apply to the 2013 False Advertising Claim as to any of the Plaintiffs and it does not apply to the 2013 Robo Calling and False Advertising Claims as to Gross because he is not an Insured Organization;

c.      failing to deal fairly with Plaintiffs and failing to give equal consideration in all matters to their interests;

d.      engaging in unreasonable, frivolous, or untenable denial of Policy benefits;

e.      asserting inconsistent positions regarding the meaning of its Policy provisions and adopting the coverage-defeating interpretation as the correct one;

f.      not attempting in good faith to effectuate a prompt, fair and equitable settlement of claims in which Arch's liability under the Policy had become reasonably clear and not paying amounts due when Arch's liability for same had become reasonably clear;

g.      compelling Plaintiffs to institute, continue, or submit to litigation to recover amounts due under the Policy;

h.      failing to provide a reasonable explanation of the basis for its various insurance positions; and

i.      such other acts of bad faith and breach of the duty of good faith and fair dealing as may be revealed through the course of discovery in this case.

75.    As a direct, proximate, natural and foreseeable consequence of the foregoing, Plaintiffs have suffered damages for which they are entitled to recover, including, but not limited to, compensatory damages, consequential damages, interest, costs and attorney fees. In addition, Plaintiffs are entitled to an award of punitive damages in such amount as is sufficient to punish Arch for its willful and tortious actions, pursuant to 42 Pa. C.S.A. §8371.

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

A.     Awarding compensatory damages in favor of Plaintiffs and against Arch in the amount of $5,000,000 less the $20,000 deductible;

B.     Awarding consequential damages in favor of Plaintiffs and against Arch in an amount in excess of $75,000;

C.     Awarding punitive damages in favor of Plaintiffs and against Arch in an amount sufficient to punish Arch for its willful and tortious actions;

D.     Awarding interest, costs and attorney fees in favor of Plaintiffs and against Arch; and

E.     Granting such other and further relief as the Court deems just and appropriate.

## **JURY DEMAND**

Plaintiffs request a trial by jury on all issues so triable.

**REED SMITH LLP**

Date:  August 14, 2014            By:    _John Ellison_____

John N. Ellison, Esq. (I.D. No. 51098)
Matthew D. Rosso, Esq. (I.D. No. 203696)
Three Logan Square
1717 Arch Street
Suite 3100
Philadelphia, PA 19103
215-851-8100
jellison@reedsmith.com
mrosso@reedsmith.com

-and-

Jeffrey B, Morganroth (*pro hac vice* to be filed)
Matthew R. Cameron (*pro hac vice* to be filed)
Morganroth & Morganroth, PLLC
344 N. Old Woodward Ave.
Suite 200
Birmingham, MI 48009
248-864-4000
jmorganroth@morganrothlaw.com
mcameron@morganrothlaw.com

*Attorneys for Plaintiffs Connect America
Holdings, LLC, ConnectAmerica.Com, LLC,
and Kenneth Gross*

- 18 -