## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONNECT AMERICA HOLDINGS, LLC, | : | |
| CONNECTAMERICA.COM, LLC, *and* | : | |
| KENNETH GROSS, | : | CIVIL ACTION |
| | : | |
| *Plaintiffs*, | : | NO. 14-4784-TJS |
| | : | |
| v. | : | |
| | : | |
| ARCH INSURANCE COMPANY | : | |
| | : | |
| *Defendant*. | : | |
| | : | |

## DEFENDANT ARCH INSURANCE COMPANY'S ANSWER AND COUNTERCLAIM

Defendant Arch Insurance Company ("Arch"), by and through its counsel, hereby answers the Complaint of Plaintiffs Connect America Holdings, LLC ("CA Holdings"), ConnectAmerica.com, LLC ("Connect America") and Kenneth Gross ("Gross") (collectively, "Plaintiffs") as follows:

## NATURE OF THE ACTION

1.      Admitted in part; denied in part.  Arch admits only that Plaintiffs have filed this civil action against Arch regarding Arch's alleged obligations under an insurance policy issued by Arch.  The remaining allegations in this paragraph set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure.  To the extent these allegations are deemed factual, they are denied.

## PARTIES

2.      On information and belief, Arch admits the allegations in this paragraph of the Complaint.

3. On information and belief, Arch admits the allegations in this paragraph of the Complaint.

4. On information and belief, Arch admits the allegations in this paragraph of the Complaint.

5. Admitted in part; denied in part. Arch admits only that it is a Missouri corporation and that Arch transacts business in Pennsylvania. Arch denies that Arch's principal place of business is in Kansas City, Missouri. By way of further answer, Arch's principal place of business is in New York, N.Y.

## JURISDICTION AND VENUE

6. Admitted.

7. Admitted.

## GENERAL ALLEGATIONS

### The Insurance Policy

8. Admitted.

9. Admitted in part; denied in part. Arch admits only that it issued certain insurance policies to CA Holdings, commencing with a policy that incepted on December 24, 2010. Arch denies Plaintiffs' characterization of a purported "history" of Arch insuring CA Holdings. The policies that Arch issued to Plaintiffs speak for themselves, and Arch denies any characterization of those writings contrary to their express terms.

10. Admitted in part; denied in part. Arch admits only that CA Holdings purchased Arch Corporate Canopy Policy of Private Company Management Liability & Crime Insurance bearing policy number PCD0042010-02, which contains a policy period of December 24, 2012 to December 24, 2013 (the "Policy"), a copy of which was attached to the Complaint as Exhibit 1.

The Policy is in writing and speaks for itself. Arch denies any characterization of that writing contrary to its express terms.

11.     The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure. To the extent these allegations are deemed factual allegations, they are denied. The Policy is in writing and speaks for itself. Arch denies any characterization of the Policy contrary to its express terms.

12.     The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure. To the extent these allegations are deemed factual allegations, they are denied. The Policy is in writing and speaks for itself. Arch denies any characterization of the Policy contrary to its express terms.

13.     The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure. To the extent these allegations are deemed factual allegations, they are denied. The Policy is in writing and speaks for itself. Arch denies any characterization of the Policy contrary to its express terms.

14.     The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure. To the extent these allegations are deemed factual allegations, they are denied. The Policy is in writing and speaks for itself. Arch denies any characterization of the Policy contrary to its express terms.

15.     The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure. To the extent these allegations are deemed factual allegations, they are denied. The Policy is in writing and speaks for itself. Arch denies any characterization of the Policy contrary to its express terms.

16.     The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure. To the extent these allegations are deemed factual allegations, they are denied. The Policy is in writing and speaks for itself. Arch denies any characterization of the Policy contrary to its express terms.

17.     The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure. To the extent these allegations are deemed factual allegations, they are denied. The Policy is in writing and speaks for itself. Arch denies any characterization of the Policy contrary to its express terms.

18.     Admitted in part; denied in part. Arch admits only that the Policy obligates Arch to pay covered Loss in connection with a Claim as those terms are defined by the Policy, subject to all other Policy terms, conditions and exclusions. Arch denies any implication that Plaintiffs' Claim is, in fact, covered by the Policy. By way of further answer, the allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure. To the extent these allegations are deemed factual allegations, the Policy is in writing and speaks for itself. Arch denies any characterization of the Policy contrary to its express terms.

19.     After reasonable investigation, Arch is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph of the Complaint as to whether Gross is the "Chairman" and "a manager" of CA Holdings and Connect America, and such allegations are, therefore, denied. By way of further answer, documents reflect that Gross is, *inter alia*, the "President" of CA Holdings. The remaining allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure. To the extent these allegations are deemed factual allegations, the Policy is

in writing and speaks for itself. Arch denies any characterization of the Policy contrary to its express terms.

20.     The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure. To the extent these allegations are deemed factual allegations, they are denied. The Policy is in writing and speaks for itself. Arch denies any characterization of the Policy contrary to its express terms.

21.     The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure. To the extent these allegations are deemed factual allegations, they are denied. The Policy is in writing and speaks for itself. Arch denies any characterization of the Policy contrary to its express terms.

### The 2013 "Life Alert" Action

22.     Admitted in part; denied in part. Arch admits only that Life Alert Emergency Response, Inc. ("Life Alert") filed a civil action against Connect America, Gross, LifeWatch, Inc., Evan Sirlin, Life Agent Response 1, LLC, Greg Small, and Trilogy Investment, LLC in May of 2013. By way of further answer, that action was filed on May 14, 2013 in the U.S. District Court for the Central District of California, docket no. 2:13-cv-03455-JAK-SS (the "2013 Action"). The 2013 Action Complaint is in writing and speaks for itself. Arch denies any characterization of the 2013 Action Complaint contrary to its express terms.

23.     Admitted in part; denied in part. Arch admits only that, in August of 2013, Life Alert amended the 2013 Action Complaint, adding defendants Michael Hilgar and Worldwide Info Services, Inc. and additional claims. By way of further answer, the 2013 Action First Amended Complaint was filed on August 28, 2013. The 2013 Action First Amended Complaint

is in writing and speaks for itself.  Arch denies any characterization of that pleading contrary to its express terms.

24.     Denied.  The 2013 Action First Amended Complaint is in writing and speaks for itself.  Arch denies any characterization of the 2013 Action First Amended Complaint contrary to its express terms, including but not limited to Plaintiffs' characterization of and/or reference to the claims in the 2013 Action First Amended Complaint as the "2013 Robo Calling Claims."

25.     Denied.  The 2013 Action First Amended Complaint is in writing and speaks for itself.  Arch denies any characterization of 2013 Action First Amended Complaint contrary to its express terms, including but not limited to Plaintiffs' characterization of and/or reference to the claims in the 2013 Action First Amended Complaint as the "2013 False Advertising Claims."

**Plaintiffs Seek Coverage from Arch for the<br>2013 Life Alert Action**

26.     Admitted in part; denied in part.  Arch admits only that on May 29, 2013, it received notice of the 2013 Action Complaint from Plaintiffs' broker, Aon, which included Plaintiffs' request for coverage under the Policy.  The remaining allegations in this paragraph set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure.  To the extent these allegations are deemed factual, they are denied.

27.     Admitted in part; denied in part.  Arch admits only that the parties communicated with each other directly and/or through their respective agents concerning Plaintiffs' Claim in connection with the 2013 Action.  Arch denies any purported characterizations by Plaintiffs of those communications, including Plaintiffs' allegation that the communications discussed "coverage for the claims alleged in the Amended Complaint."  By way of further answer, the first time that Arch received a copy of the 2013 Action First Amended Complaint was on

January 24, 2014, when Plaintiffs finally sent that pleading to Arch, despite possessing it for roughly five months.

28. The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure. To the extent these allegations are deemed factual allegations, the Policy is in writing and speaks for itself. Arch denies any characterization of the Policy contrary to its express terms.

29. The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure. To the extent these allegations are deemed factual allegations, the Policy is in writing and speaks for itself. Arch denies any characterization of the Policy contrary to its express terms.

30. The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure. To the extent these allegations are deemed factual allegations, the Policy is in writing and speaks for itself. Arch denies any characterization of the Policy contrary to its express terms.

31. Admitted in part; denied in part. Arch admits only that in its June 11, 2013 letter, and based solely on the allegations set forth in the original 2013 Action complaint, Arch indicated "[a]t the present time … potential coverage for this matter is limited to Kenneth Gross" and "subject to a full reservation of rights." Arch further admits only that it indicated the Trademark Infringement Exclusion in D&O Coverage Section 4, Exclusion B.5. bars coverage. Arch's June 11, 2013 letter is in writing and speaks for itself. Arch denies any characterization of that letter contrary to its express terms. By way of further answer, Arch's June 11, 2013 letter also states: "Arch's coverage analysis is based on the information available to it at this time," and it further states, *inter alia*, that Arch:

expressly reserve[s] all rights available under the Arch Policy, and at law, whether or not specifically referenced herein, including but not limited to the right to deny coverage for the Submitted Matter based on the Section 13. Other Insurance, of the General Terms & Conditions Part of the Policy, as well as upon any additional terms, conditions, exclusions, endorsements and other provisions of the Arch Policy, including statements, declarations, and omissions made in connection with the application(s) therefore, as may be found to be applicable. Arch further reserves the right to raise additional defenses or exclusions to coverage as circumstances warrant. No subsequent action, if any, that may be taken by Arch is to be construed as a waiver of any position set forth in this letter or any rights otherwise available to it, pursuant to the Arch Policy, at law, and/or in equity.

### **Connect America Settles the 2013 Life Alert Action without Prior Consent**

32.     After reasonable investigation, Arch is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph of the Complaint, and they are, therefore, denied.

33.     Admitted in part; denied in part.  Arch admits only that on January 21, 2014, Plaintiffs requested that Arch "confirm that Arch Insurance does not object to the terms of the settlement as set forth in the Settlement Agreement."  Insofar as Plaintiffs in this paragraph of the Complaint cite to certain provisions of the Policy, the Policy is in writing and speaks for itself.  Arch denies any characterization that is contrary to its express terms.  Furthermore, at the time Plaintiffs allegedly requested "consent" from Arch, neither Plaintiffs nor their agents and/or representatives, including Plaintiffs' counsel and agents/representatives at Aon, had yet provided Arch with a copy of the 2013 Action First Amended Complaint, despite that pleading being filed approximately five months earlier, on August 28, 2013.  In July of 2013, Arch had also requested "copies of all pleadings between Life Alert … and Connect America … for the past ten (10) years" as well as the "First Mercury coverage position" -- with Arch following up on these requests in November and December of 2013.  In fact, Arch did not receive the 2013 Action First Amended Complaint until Plaintiffs provided this for the first time on January 24, 2014 -- one

day *after* the January 23, 2014 date that Plaintiffs allege Arch purportedly "agreed to waive lack of consent as a coverage defense in connection with the proposed settlement agreement." Arch therefore denies that Plaintiffs "requested consent" and Arch further denies that it consented and/or agreed to waive consent as a defense. By way of further answer, Plaintiffs confirmed in written correspondence that a settlement of the 2013 Action had already been reached as of December 2013.

34. Denied. Arch incorporates herein by reference its response to paragraph 33 of the Complaint.

35. After reasonable investigation, Arch is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph of the Complaint, and they are, therefore, denied. By way of further answer, Plaintiffs confirmed in written correspondence that a settlement of the 2013 Action had already been reached as of December 2013.

### Arch's Denial of Coverage for the 2013 Life Alert Action

36. Admitted in part; denied in part. Arch admits only that, pursuant to its earlier reservations of its rights and following notice for the first time of the 2013 Action First Amended Complaint, Arch advised Plaintiffs in a February 6, 2014 letter that no coverage existed for Gross. Arch denies Plaintiffs' characterization of this letter as providing notice "for the first time" that coverage was unavailable for the 2013 Action. From the outset of this claim, Arch denied coverage for CA Holdings and Connect America and Arch explained that there was "potential" coverage for Gross, subject to a full reservation of Arch's rights.

37. The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure. To the extent these allegations are deemed factual allegations, the Policy is in writing and speaks for itself. Arch

denies any characterization of the Policy contrary to its express terms. Furthermore, Arch denies that it "improperly denied and refused coverage."

38. The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure. To the extent these allegations are deemed factual allegations, the Policy is in writing and speaks for itself. Arch denies any characterization of the Policy contrary to its express terms. Furthermore, Arch denies that it "wrongfully denied and refused coverage."

39. The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure. To the extent these allegations are deemed factual allegations, the Policy is in writing and speaks for itself. Arch denies any characterization of the Policy contrary to its express terms. Furthermore, Arch denies that it "wrongfully denied and refused coverage."

40. Denied. Arch denies that it "possessed all of the information upon which it denied coverage for some period of time" prior to denying coverage. By way of further answer, Arch incorporates herein by reference its response to paragraph 33 and of the Complaint.

41. Denied. Arch denies that the denial of coverage by Arch is "improper and inappropriate" and that Arch has "refused to reconsider" its coverage position. By way of further answer, the correspondence reflects Arch's willingness to discuss this Claim and its actual discussion of this Claim, on numerous occasions, with Plaintiffs, Plaintiffs' counsel, and Plaintiffs' representatives and/or agents, including those at Aon. Arch's denial of coverage is proper and warranted. By way of further answer, the Policy is in writing and speaks for itself. Arch denies any characterization of the Policy contrary to its express terms.

42.     Admitted in part; denied in part.  Arch admits only that it denied coverage based on certain Policy provisions referenced in this paragraph of the Complaint.  Arch denies any allegation or implication that these are the *only* bases upon which Arch denied coverage or reserved its right to deny coverage.  By way of further answer, this paragraph of the Complaint omits any reference to additional relevant Policy provisions asserted by Arch, such as the Interrelated Claims Provision set forth in Section 10 of the General Provisions of the Policy, as noted in, *inter alia*, Arch's February 6, 2014 letter.

43.     Denied.  Arch specifically denies that its reasons for denying coverage lack merit.

44.     The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure.  To the extent these allegations are deemed factual allegations, the Policy is in writing and speaks for itself.  Arch denies any characterization contrary to its express terms.

45.     The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure.  To the extent these allegations are deemed factual allegations, the Policy is in writing and speaks for itself.  Arch denies any characterization contrary to its express terms.

46.     Denied.  The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure.  To the extent these allegations are deemed factual allegations, they are denied.  The Policy is in writing and speaks for itself.  Arch denies any characterization contrary to its express terms.  Arch further denies Plaintiffs' characterization of and/or reference to the 2004 cease and desist letter and/or prior 2008/2009 litigation involving Life Alert and Connect America and Gross as the "2004 Internet Posting Claims."  The 2004 cease and desist letter as well as the pleadings in the

2008/2009 litigation are written documents which speak for themselves.  Arch denies any characterization of and/or reference to the 2004 cease and desist letter and/or the pleadings in the 2008/2009 prior litigation contrary to their express terms.  Arch denies that its coverage position, including that regarding the application of the Interrelated Acts Exclusion, lacks merit.

47.     Denied.  Arch specifically denies that it made any "erroneous assertion" regarding coverage available under the Policy or the 2013 Action's relatedness to prior claims.

48.     Denied.  The 2004 cease and desist letter as well as the pleadings in the 2008/2009 litigation are written documents which speak for themselves.  Arch denies any characterization of the 2004 cease and desist letter and the pleadings in the 2008/2009 litigation contrary to their express terms.

49.     Admitted in part; denied in part.  Arch admits only that the 2008/2009 litigation settled and a permanent injunction was entered against Connect America.  The permanent injunction is in writing and speaks for itself.  Arch denies any characterization contrary to its express terms.  By way of further answer, Gross and CA Holdings were also bound by that permanent injunction.

50.     Denied.  The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure.  To the extent these allegations are deemed factual allegations, they are denied.  The Policy is in writing and speaks for itself.  Arch denies any characterization contrary to its express terms.  The 2004 cease and desist letter as well as the pleadings in the 2008/2009 litigation are written documents which speak for themselves.  Arch denies any characterization of the 2004 cease and desist letter and the pleadings in the 2008/2009 litigation contrary to their express terms.

51.     Denied.  Arch specifically denies that its coverage determination "was nothing more than a false pretext" and Arch further denies that its denial of coverage was "concocted in bad faith."  The remaining allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure.  To the extent these allegations are deemed factual allegations, they are denied.  The Policy is in writing and speaks for itself.  Arch denies any characterization contrary to its express terms.   Arch denies any allegation that it handled Plaintiffs' Claim in bad faith or reached its coverage determination through any reckless or knowing disregard to the terms and conditions of the Policy.

52.     Denied.  Arch incorporates herein by reference its responses to paragraphs 32 through 35 of the Complaint.

53.     Denied.  Arch specifically denies that it engaged in a "bad faith attempt to avoid providing coverage" under the Policy.  The remaining allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure.  To the extent these allegations are deemed factual allegations, the Policy is in writing and speaks for itself.  Arch denies any characterization contrary to its express terms.  By way of further answer, Arch incorporates herein by reference its responses to paragraphs 32 through 35 of the Complaint.

54.     Denied. The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure.  To the extent these allegations are deemed factual allegations, they are denied.  By way of further answer, the Policy is in writing and speaks for itself.  Arch denies any characterization contrary to its express terms.

## COUNT I – BREACH OF INSURANCE CONTRACT

55.     Arch hereby incorporates by reference its responses to paragraphs 1 through 54 of the Complaint, as if fully set forth herein.

56.     Denied.

57.     Denied.

58.     Admitted in part; denied in part.  Arch admits only that Plaintiffs have paid the necessary premium for the Policy.  The remaining allegations in this paragraph of the Complaint are denied.

59.     Denied.  Arch denies the allegation in this paragraph of the Complaint that it has stated it will not perform its obligations under the Policy or has failed to perform its obligations under the Policy.  By way of further answer, Arch has explained to Plaintiffs in writing, repeatedly, that no coverage exists under the Policy for the 2013 Action.  The remaining allegations in this paragraph of the Complaint are denied.

60.     The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure.

61.     Denied.

62.     Denied.

WHEREFORE, Arch requests that this Honorable Court enter judgment in its favor and against Plaintiffs, dismissing Plaintiffs' Complaint with prejudice, and awarding Arch attorneys' fees, costs of suit, and such other relief as this Court deems appropriate.

## COUNT II - DECLARATORY JUDGMENT

63.     Arch hereby incorporates by reference its responses to paragraphs 1 through 62 of the Complaint, as if fully set forth herein.

64.     Admitted in part; denied in part.  Arch admits only that the parties have an actual and present controversy warranting the issuance of declaratory relief regarding the coverage available to Plaintiffs under the Policy for the 2013 Action.  Arch denies the allegation that certain provisions referred to in this paragraph of the Complaint are the *only* Policy provisions justifying the lack of coverage for Plaintiffs' Claim.   By way of further answer, and based upon the terms of the draft settlement agreement currently in Arch's possession from the underlying 2013 Action, it is possible that, based on the relief Life Alert obtains against the remaining and/or any other defendants in the 2013 Action, Plaintiffs will be reimbursed by Life Alert for up to the entire amount of Plaintiffs' settlement payment made in connection with the 2013 Action.  Accordingly, Plaintiffs may suffer no Loss, as defined in the Policy, and/or damages.

65.     The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure.

66.     Admitted in part; denied in part.  Arch admits it disputes coverage and that its defenses to coverage form an appropriate basis for declaratory relief as set forth in Arch's counterclaim below.  Arch specifically denies that it "disputes the proper construction of the Policy" and its terms and provisions.   Arch further denies that Plaintiffs' claim is ripe for declaratory relief.  Upon information and belief, and based upon the terms of the draft settlement agreement currently in Arch's possession from the underlying 2013 Action, it is possible that, based on the relief Life Alert obtains against the remaining and/or any other defendants in the 2013 Action, Plaintiffs will be reimbursed by Life Alert for up to the entire amount of Plaintiffs' settlement payment made in connection with the 2013 Action.  Accordingly, Plaintiffs may suffer no Loss, as defined in the Policy, and/or damages.

WHEREFORE, Arch requests that this Honorable Court enter judgment in its favor and against Plaintiffs, dismissing Plaintiffs' Complaint with prejudice, and awarding Arch attorneys' fees, costs of suit, and such other relief as this Court deems appropriate.

## COUNT III - BAD FAITH -
## 42 Pa. CONS. STAT. ANN. § 8371

67.     Arch hereby incorporates by reference its responses to paragraphs 1 through 66 of the Complaint, as if fully set forth herein.

68.     Denied.

69.     Denied.

70.     Denied.

71.     The allegations in this paragraph of the Complaint set forth legal conclusions to which no response is required under the Federal Rules of Civil Procedure.

72.     Denied.

73.     Denied.

74.     Denied.

75.     Denied.

WHEREFORE, Arch requests that this Honorable Court enter judgment in its favor and against Plaintiffs, dismissing Plaintiffs' Complaint with prejudice, and awarding Arch attorneys' fees, costs of suit, and such other relief as this Court deems appropriate.

## AFFIRMATIVE DEFENSES

Arch sets forth the following affirmative defenses in response to Plaintiffs' Complaint.

## First Affirmative Defense

Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

## Second Affirmative Defense

Plaintiffs' Complaint is barred by the doctrines of unclean hands and/or breach of the duty of good faith and fair dealing.

## Third Affirmative Defense

At all times relevant hereto, Arch acted reasonably, prudently, promptly, in good faith and with due regard to the interests of its insured under Pennsylvania law.

## Fourth Affirmative Defense

Arch has not exhibited conduct that could sustain a claim for statutory bad faith under Pennsylvania law.

## Fifth Affirmative Defense

Plaintiffs' demand for compensatory and/or consequential damages under its statutory bad faith claim should be dismissed or stricken for failure to state a claim and/or an appropriate form of relief.

## Sixth Affirmative Defense

Arch did not knowingly or intentionally make an unreasonable denial of coverage under the Policy and did not act in reckless disregard of any reasonable basis for coverage under the Policy.

## Seventh Affirmative Defense

Coverage is barred and/or limited pursuant to D&O Coverage, Section 4., Exclusion B.5., which states:

> The Insurer shall not pay Loss for any Claim against an Insured Organization:
>
> arising from, based upon, or attributable to infringement of any intellectual property rights, including, without limitation, copyrights, patents, trademarks, trade names, trade dress, service marks, or trade secrets[.]

(the "Trademark Infringement Exclusion").

## Eighth Affirmative Defense

Coverage is barred and/or limited pursuant to the Policy's General Provisions Section 10.

"Interrelated Claims," which provides:

10.     INTERRELATED CLAIMS

Regarding the Liability Coverage Parts only, all Claims arising from, based upon, or attributable to the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to be a single Claim first made on the earliest date that:

A.      any of such Claims was first made, even if such date is before the Policy Period;

B.      proper notice of such Wrongful Act or Interrelated Wrongful Act was given to the Insurer pursuant to Section 9.B above; or

C.      notice of such Wrongful Act or Interrelated Wrongful Act was given under any prior insurance policy.

(the "Interrelated Claims Provision").

## Ninth Affirmative Defense

Coverage is barred and /or limited pursuant to Endorsement 11, "Prior Acts Exclusion

(D&O)," which provides:

Regarding the Directors, Officers, & Organization Liability Coverage Part, it is agreed that the Insurer shall not pay Loss for any Claim against an Insured arising from, based upon, or attributable to:

1.      any Wrongful Act occurring on or prior to the Prior Wrongful Acts Date specified below; or

2.      any Interrelated Wrongful Acts thereto.

Prior Wrongful Acts Date: 12/24/10

(the "Interrelated Acts Exclusion").

## Tenth Affirmative Defense

Coverage is barred and/or limited under the "known loss" doctrine.

### Eleventh Affirmative Defense

Coverage is barred and/or limited pursuant to Endorsement 2, Section 23. "Pending and

Prior Litigation Exclusion," which amends D&O Coverage Section 4. A. 2, and states that Arch:

> shall not pay Loss for any Claim against an Insured … arising from, based upon,
> or attributable to any:
>
> a. written demand, suit or proceeding … made or initiated against an
>    Insured within the scope of any Directors and Officers Liability,
>    Employment Practices Liability or Fiduciary Liability coverage (whether
>    covered or not) on or prior to the applicable Pending and Prior Litigation
>    Date in Item 6 of the Declarations [*i.e.*, December 24, 2010 for all D&O
>    Coverage Insuring Agreements]; or
>
> b. any Wrongful Act alleged in any such written demand, suit, proceeding or
>    audit or any Interrelated Wrongful Acts thereto[.]

(the "Prior Litigation Exclusion").

### Twelfth Affirmative Defense

Coverage is barred and/or limited pursuant to General Provisions, Section 8., "Defense of

Claims," Paragraph C:

> The Insureds shall neither admit nor assume any liability, enter into any
> settlement agreement, stipulate to any judgment, or incur any Defense Costs
> without the prior written consent of the Insurer, such consent not to be
> unreasonably withheld. The Insurer shall not be liable for any admission,
> assumption, settlement, stipulation, or Defense Costs to which it has not
> consented.

("Consent to Settlement Provision").

### Thirteenth Affirmative Defense

Coverage is barred and/or limited pursuant to General Provisions, Section 8., "Defense of

Claims," Paragraph E:

> The Insureds shall give to the Insurer all information and cooperation as the
> Insurer may reasonably request. Upon the Insurer's request, the Insureds shall

attend proceedings, hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and conducting the defense of any Claim.

("Cooperation Clause").

## **Fourteenth Affirmative Defense**

Coverage is barred and/or limited pursuant to the Policy's General Provisions, Section 11

as amended by Endorsement 1, which states:

Coverage under this Policy shall apply only in excess of any other valid and collectible insurance or bond regardless of whether such other insurance or bond is stated to be excess, contributory, contingent or otherwise, unless such other insurance or bond is written specifically excess of this Policy.

("Other Insurance Provision").

## **Fifteenth Affirmative Defense**

Pursuant to Endorsement 19, "Insured Duty to Defend", which amends the Policy's

General Provisions, Arch owes no duty to defend. Endorsement 19 provides in relevant part:

It shall be the duty of the Insureds to defend any Claim. The Insurer does not assume any duty to defend any Claim. The Insurer shall have the right to associate itself in the defense and settlement of any Claim. The Insurer may make any investigation it deems appropriate.

## **Sixteenth Affirmative Defense**

Coverage is barred and/or limited pursuant to Endorsement 19, "Insured Duty to

Defend", which amends the Policy's General Provisions. Endorsement 19 provides in relevant

part:

if the Insureds incur Loss that is only partially covered by this Policy because a Claim includes both covered and uncovered matters or because a Claim is made against both covered and uncovered parties, Loss shall be allocated between covered Loss and non-covered loss based upon the relative legal exposure of all parties to such matters.

(the "Allocation Provision").

### Seventeenth Affirmative Defense

Pursuant to General Provisions Section 6. "Limit of Liability," Paragraph C., "Defense Costs shall be part of, and not in addition to, each applicable Limit of Liability. Payment of Defense Costs by the Insurer shall reduce each applicable Limit of Liability."

### Eighteenth Affirmative Defense

Plaintiffs cannot satisfy their burden of proving that all of the requirements of any of the D&O Coverage Insuring Agreements have been satisfied.

### Nineteenth Affirmative Defense

Coverage is barred and/or limited based on Plaintiffs' prior knowledge of or information concerning pending claims, alleged acts, errors, omissions, facts or circumstances which could have resulted in a claim prior to the issuance of the Policy.

### Twentieth Affirmative Defense

Plaintiffs have not suffered any Loss, as defined in the Policy, and/or Plaintiffs have not suffered any damages.

### Twenty-First Affirmative Defense

Plaintiffs' claims for punitive and statutory damages, attorney's fees and costs are barred or limited by the Due Process Clause of the U.S. Constitution, and the ban on cruel and unusual punishment in the Eighth Amendment to the U.S. Constitution.

### Twenty-Second Affirmative Defense

Other terms, conditions, provisions, exclusions and definitions contained within the Policy are or may be applicable.  Arch incorporates herein the entirety of the Policy which is attached hereto as Exhibit A, and in doing so Arch specifically reaffirms all portions of the

Policy which are or may be applicable. Arch further reserves the right to supplement and/or amend this pleading, including but not limited to asserting additional affirmative defenses.

**COUNTERCLAIM**

For its Counterclaim, Arch requests that this Court declare that no coverage exists under the Policy for the 2013 Action. Arch incorporates the foregoing definitions and abbreviations as set forth in Arch's responses to the Complaint and in Arch's Affirmative Defenses, and in support thereof Arch alleges as follows:

**PARTIES**

1. Arch is a Missouri corporation with its principal place of business is in New York, N.Y.

2. On information and belief, CA Holdings is a Delaware limited liability company with its principal place of business in the County of Delaware, Pennsylvania.

3. On information and belief, Connect America is a Delaware limited liability company with its principal place of business in the County of Delaware, Pennsylvania.

4. On information and belief, Gross is an individual who resides in the County of Delaware, Pennsylvania.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the suit is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs.

6. Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. § 1391 because Plaintiffs are domiciled in this judicial district and a substantial part of the events giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

### The Issuance of the Arch Policy

7.      On March 10, 2011, Arch issued to CA Holdings its Corporate Canopy Policy -- Private Company Management Liability & Crime Insurance Policy No. PCD0042010-02, with a policy period of December 24, 2012 to December 24, 2013, a copy of which was attached to the Complaint (the "Policy").  A copy of the Policy is attached hereto as **Exhibit A**.

8.      Arch had previously issued two other policies to CA Holdings, the first with a policy period of December 24, 2010 to December 24, 2011 (the "2010-2011 Policy") and the second with a policy period of December 24, 2011 to December 24, 2012 (the "2011-2012 Policy").

9.      In connection with its underwriting of CA Holdings, Arch requested certain information and disclosures from Plaintiffs, including information regarding prior claims and litigation as well as Plaintiffs' prior "knowledge of or information concerning any alleged acts, errors, omissions, facts or circumstances which may result in a claim that may fall within the scope of coverage" of the respective policies.

10.      Specifically, on December 17, 2012, Lara Lewis of Connect America signed and submitted its application for coverage under the (2012-2013) Policy.  A copy of the 2012-2013 Application is attached hereto as **Exhibit B**.

11.      Similarly, on March 3, 2011, Arch received the application for the 2010-2011 Policy signed by Kenneth Gross as the President of CA Holdings ("2010-2011 Application") and on December 5, 2011, Lynda Delaney of Connect America signed the renewal application for the 2011-2012 Policy.  Copies of the 2010-2011 and 2011-2012 Applications are attached hereto as **Exhibits C** and **D**, respectively.

12.     Based on the representations made in these applications, Arch issued coverage to CA Holdings, and by extension, the Plaintiffs, including the Policy at issue in this lawsuit.

**Plaintiffs' Undisclosed History Of
Trademark Infringement Litigation With Life Alert**

13.     Upon information and belief, on or about August 6, 2004, Life Alert sent a cease and desist letter to Plaintiffs regarding Plaintiffs' alleged infringement of Life Alert's trademarks.  Connect America did not disclose and, despite repeated requests, to date has not provided to Arch a copy of this threat of civil action against it made by Life Alert.

14.     Subsequently, on July 14, 2008, Life Alert filed a Complaint against Connect America and others in the U.S. District Court for the Central District of California (2:08-cv-04586-PA), asserting claims for Lanham Act violations, unfair competition, and trademark infringement (the "2008 Action").  A true and correct copy of the 2008 Complaint is attached hereto as **Exhibit E**.

15.     On May 6, 2009, the 2008 Action was dismissed without prejudice.

16.     On June 9, 2009, Life Alert re-filed substantially the same complaint, also in the U.S. District Court for the Central District of California (2:09-cv-04094-PA), but adding Mr. Gross as a defendant and asserting an additional Lanham Act violation for false advertising under § 1125(a)(1)(B) (the "2009 Action").  A true and correct copy of the 2009 Complaint is attached hereto as **Exhibit F**.

17.     The 2009 Action concerned Plaintiffs' alleged infringement of Life Alert's registered trademarks U.S. Registration Nos. 2552506; 2563006; 2641470; 3212604 (referred to collectively in the 2009 Complaint as well as herein as the "Life Alert Marks") as well as U.S.

Registration Nos. 2630737 and 3255726 (referred to collectively in the 2009 Complaint as well as herein as the "I've Fallen Marks").  Ex. F, 2009 Complaint, ¶¶ 9-12.

18.    The 2009 Complaint alleged that Connect America and Mr. Gross willfully violated the Life Alert Marks and the I've Fallen Marks "in order to capitalize on the notoriety and goodwill of Life Alert" and that Plaintiffs' "purpose in utilizing the Life Alert Mark and/or the I've Fallen Marks is an attempt to benefit unfairly from the valuable goodwill and excellent reputation established at great expense and effort throughout the United States by Life Alert through the use of the Life Alert Mark and/or the I've Fallen Marks."  Ex. F, 2009 Complaint, ¶¶ 19-20.

19.    Life Alert further alleged that Connect America and Mr. Gross' "use of the Life Alert Mark and/or the I've Fallen Marks is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, confusion, or association … with Life Alert, or as to the origin, sponsorship, or approval of [Connect America's] goods, services, or commercial activities by Life Alert."  Ex. F, 2009 Complaint, ¶ 18.

20.    In addition, the 2009 Complaint alleged trademark infringement in connection with Connect America's:

> (a) sponsored internet advertisements, (b) internet keyword searches, metatags, source code and web pages for their websites, and (c) inquiries by potential customers to the "1-800" telephone number for the products and serves being sold by Defendants [*i.e.*, Connect America and Gross].  Defendants' improper and unlawful uses of the Life Alert Mark and/or I've Fallen Marks are for the purpose of selling products and services competitive to those of Life Alert.

Ex. F, 2009 Complaint at ¶ 17.

21.    Finally, the 2009 Complaint alleged that Connect America and Mr. Gross "contributed to, and are liable for, Medical Guardian, LLC's violation of Life Alert's rights in the Life Alert Mark and/or the I've Fallen Marks."  Ex. F, 2009 Complaint at ¶ 17.  Thus, the

2009 Complaint alleged not only that Connect America and Gross were liable for their own willful infringement of Life's Alert's trademarks, but were also liable for the infringement committed on its behalf by third-parties, such as its dealer Medical Guardian, LLC.

22. Succinctly stated:  in the 2009 Action, Connect America faced claims made by its competitor, Life Alert, based on Connect America (directly and/or through third-party agents) going out into the marketplace and creating confusion that Connect America was, in fact, Life Alert, in order to capitalize on Life Alert's goodwill and longstanding reputation in the industry in order for Connect America to sell its own products and services to consumers who actually believed they were receiving the products and services of Life Alert.

23. Life Alert sought relief in the 2009 Complaint that included compensatory and statutory damages (including treble damages pursuant to 15 U.S.C. § 1117(b)), and permanent injunctive relief against Connect America and Gross barring them (and/or any person or entity owned or controlled by them) from:

(a)  Using the name or marks "LIFE ALERT," "HELP, I'VE FALLEN AND I CAN'T GET UP!", "I'VE FALLEN AND I CAN'T GET UP" or any colorable imitation thereof, or any other name or mark likely to cause confusion, mistake, or deception, in connection with the sale, offering for sale, distribution, manufacturing, advertising, or promotion of their goods or services;

(b)  Using any false designation of origin or false description that can, or is likely to, lead the trade or public, or individual members thereof, to believe that any product or service manufactured, distributed, sold, offered for sale, or advertised by Defendants are in any manner associated or connected with Life Alert or is sold, manufactured, licensed, sponsored, or approved or authorized by Life Alert;

(c)  Engaging in any other activity constituting an infringement of Life Alert's trademark rights or otherwise unfairly competing with Life Alert; and

(d)  Engaging in any other activity that dilutes the distinctive quality of the Life Alert Mark and/or the I've Fallen Marks by, among other things, using the Life Alert Mark and/or the I've Fallen Marks in connection with the sale, offering for sale, distribution, manufacturing, advertising, or promotion of its goods or services.

Ex. F, 2009 Complaint at p. 9, ¶ 1.

24.     On September 25, 2009, pursuant to a stipulated settlement, the court entered final

judgment and a permanent injunction against Connect America and Mr. Gross providing as

follows:

> Defendants [Connect America and Gross], and any person or entity owned or
> controlled by Defendants (collectively the "Enjoined Parties"), are hereby
> permanently, restrained, enjoined and prohibited, directly or indirectly, ***by any
> means, method or device whatsoever***, from using the trademarks "Life Alert",
> "Help, I've Fallen and I Can't Get Up!" and "I've  Fallen and I Can't Get Up!", or-
> & any trademark or name confusingly similar thereto, in connection with the sale,
> offering for sale, distribution, manufacturing, advertising, or promotion of goods
> and/or services, relating to and in connection with the personal emergency
> response industry, by an Enjoined Party ***including but not limited to***, purchasing
> or bidding on them as search terms or "keywords" on websites (including but not
> limited to Internet search engines) or selecting or using them in any way in
> connection with any website, whether visible text of the website, in metatags or as
> context for the placement of advertising.

(emphasis added).  A true and correct copy of the September 25, 2009 Final Judgment and

Permanent Injunction (the "Permanent Injunction") is attached hereto as **Exhibit G**.

25.     Plaintiffs' infringement, however, allegedly did not cease after the Permanent

Injunction was issued.  Indeed, Plaintiffs specifically alleged in the 2013 Action that the actions

of Connect America represent a "***continuing infringement of Life Alert's trademark***" that "in

each instance, Gross disingenuously claimed [ . . .] were mistakes on the part of his company or

one of his dealers."  *See* 2013 Action First Amended Complaint ¶ 40 (emphasis added).  A true

and correct copy of the 2013 Action First Amended Complaint is attached hereto as **Exhibit H**.

**Plaintiffs' Continuing Trademark Infringement as Alleged in the 2013 Action**

26.     On May 14, 2013, Life Alert filed a Complaint in the U.S. District Court for the

Central District of California against Connect America, Gross, LifeWatch, Inc., Evan Sirlin, Live

Agent Response 1, LLC, Greg Small, and Trilogy Investment, LLC (2:13-cv-03455-JAK).  A true and correct copy of the 2013 Action (original) Complaint is attached hereto as **Exhibit I**.

27.     The claims asserted in the 2013 Action (original) Complaint include alleged violations of the Lanham Act (15 U.S.C. § 1125(a)), unfair competition (pursuant to California statute and common law), federal trademark infringement (under Lanham Act § 32, 15 U.S.C. § 1114 and common law), and trademark dilution (pursuant to 15 U.S.C. § 1115(c)).

28.     Like the 2009 Action before it, the claims and allegations in the 2013 Action Complaint are based on alleged violations by Plaintiffs of the same Life Alert Mark and/or I've Fallen Marks that were at issue in the 2009 Action.

29.     On August 28, 2013, Life Alert filed the 2013 Action First Amended Complaint, adding two defendants, Michael Hilgar and Worldwide Info Services, Inc., and a claim for "false advertising" under the Lanham Act, 15 U.S.C. § 1125(a), against Connect America and Mr. Gross.

30.     Once again, the claims and allegations in the 2013 Action First Amended Complaint were based on alleged violations by Plaintiffs of the same Life Alert Mark and/or I've Fallen Marks that were at issue in the 2009 Action.

31.     Unlike the (original) 2013 Action Complaint, the 2013 Action First Amended Complaint set forth comprehensive and detailed factual allegations regarding Plaintiffs' history of litigation and infringement involving Life Alert, and it also contained more detailed allegations regarding the nature of Plaintiffs' trademark infringement.

32.     For example, in a section of the 2013 Action First Amended Complaint -- absent from the original 2013 Action Complaint -- entitled "Connect America's History of Infringing Life Alert's Trademarks," Life Alert sets forth detailed allegations regarding Plaintiffs' continuous history of infringing Life's Alert's trademarks, both directly and indirectly through

Connect America's third-party dealers, and Life Alert includes allegations specifically discussing the 2008/2009 Action as well as the Permanent Injunction issued on September 25, 2009 in the 2009 Action.

33. The 2013 Action First Amended Complaint further alleges that, notwithstanding the resolution of the 2008/2009 Action and Permanent Injunction, Plaintiffs "continued to infringe Life Alert's trademarks" (*Id.* at ¶ 39) and "when confronted with Connect America's continuing infringement of Life Alert's trademarks, in each instance, Gross disingenuously claimed that they were mistakes on the part of his company or one of his dealers." (*Id.* at ¶ 40.)

34. The 2009 Action allegations and history of Plaintiffs' infringement of Life Alert's trademarks is an integral aspect of the claims pled in the 2013 Action First Amended Complaint.

35. The nature of the allegations and claims in the 2013 Action First Amended Complaint is virtually identical to that of the 2008/2009 Action, as both Actions allege (in nearly verbatim language) that Plaintiffs' infringement (either directly and/or through third-party agents) of Life Alert's trademarks "have caused mistake, deception as to the affiliation, confusion, or association of the Defendants with Life Alert, and as to the origin, sponsorship, or approval of the Defendants' goods, services, or commercial activities by Life Alert" and that "Defendants' purpose in utilizing the Life Alert Marks and/or the I've Fallen Marks is an attempt to benefit unfairly from the valuable goodwill and excellent reputation established at great expense and effort throughout the United States by Life Alert through the use of the Life Alert Marks and/or the I've Fallen Marks." (*Id.* at ¶¶ 104-05.) *Compare* Ex. F, 2009 Complaint at ¶¶ 18-20.

36. For example, in the section of the 2013 Action First Amended Complaint entitled "Connect America's False Advertising," Life Alert pleads facts concerning Connect America's

advertising in which Connect America is alleged to have falsely claimed it was established in

1977 -- whereas it was really established in 2004 -- because:

> [b]y representing that Connect America has been providing emergency response services for more than thirty-five years, Connect America is likely to cause confusion and mistake and to deceive consumers into thinking Connect America is actually Life Alert ….

(Ex. H, 2013 Action First Amended Complaint at ¶ 49.)

37.     To further illustrate this connection, in the section of the 2013 Action First

Amended Complaint entitled "The Phone Scam," Life Alert pleads facts concerning Connect

America's (continued) infringement of Life Alert's trademarks (directly and/or through its third-

party agents) through "telemarketing operations" in which – just like the 2009 Action – Connect

America infringed on Life Alert's trademarks to, *inter alia*, "lead[ ] customers to believe they are

Life Alert and not disclosing that Connect America … were the true personal emergency

response companies with which the salespersons were affiliated" and "[h]aving salespersons call

potential customers for personal emergency response systems and falsely stating that they work

with 'Life Alert' or with the 'I've Fallen and I Can't Get Up!' company *i.e.* Life Alert." (*Id.* at ¶

64.) *Compare* Ex. F, 2009 Complaint ¶ 17 (alleging infringement in "inquiries by potential

customers to the '1-800' telephone number for the products and serves being sold by [Connect

America and Gross]").

38.     Further, the nature of the relief sought by Life Alert in the 2013 Action, as well as

the statutory and other bases for that relief, mirror nearly exactly those of the 2009 Complaint.

39.     Succinctly stated:  in both the 2009 Action and 2013 Action, Connect America

faced claims made by its competitor, Life Alert, based on Connect America (directly and/or

through third-parties) going out into the marketplace and creating confusion that Connect

America was, in fact, Life Alert, in order to capitalize on Life Alert's goodwill and longstanding reputation in the industry in order for Connect America to sell its own products and services to consumers who actually believed they were receiving the products and services of Life Alert.

**Arch's Good Faith Response to Plaintiffs' Demand for Coverage for the 2013 Action**

40. On May 29, 2013, Arch received a letter from Katie Bottcher of Aon advising that she acted "[o]n behalf of Connect America Holding, LLC, Kenneth Gross and all other Insureds" and was providing notice that Plaintiffs sought coverage under the Policy for the 2013 Action. Additionally, the May 29, 2013 letter enclosed a copy of the 2013 Action (original) Complaint, and advised that Arch should "direct all correspondence to [ ] Lara Lewis" of Connect America. A true and correct copy of this May 29, 2013 letter is attached hereto as **Exhibit J**.

41. Arch acknowledged receipt of the May 29, 2013 notice letter on May 31, 2013, in correspondence to Ms. Lewis of Connect America. That letter assigned a claim number and advised Plaintiffs that Cole Trautmann of Arch had been assigned to their claim and provided Mr. Trautmann's contact information. This letter further advised as follows:

> We remind you of your continuing obligation to fully and completely cooperate with Arch in connection with this matter, and to keep us apprised of developments as this matter proceeds. Accordingly, in the event you receive or obtain additional information related to this matter, please advise us accordingly and forward all pertinent documentation and information.

A true and correct copy of Arch's May 31, 2013 letter is attached hereto as **Exhibit K**.

42. Around this same timeframe, Plaintiffs also submitted a claim for coverage for the 2013 Action under Plaintiffs' general liability policy issued by First Mercury Insurance Company (Policy No. SE-CGL-0000007151). A true and correct copy of First Mercury's June 5, 2013 letter acknowledging Plaintiffs' claim is attached hereto as **Exhibit L**.

43.     On June 6, 2013, Mr. Trautmann of Arch communicated with Ms. Lewis of Connect America that Arch had only recently become aware that CA Holdings had failed to disclose Plaintiffs' trademark infringement litigation history with Life Alert, including the existence of the Permanent Injunction. A true and correct copy of Arch's June 6, 2013 email confirming this conversation is attached hereto as **Exhibit M**.

44.     In a June 11, 2013 letter, Arch advised Plaintiffs that "potential coverage for this matter is limited to Kenneth Gross only" subject to a full reservation of Arch's rights, and that coverage was precluded for CA Holdings and Connect America pursuant to the Trademark Infringement Exclusion. This letter also advised that Arch had no duty to defend any Claim but had the right to associate in the defense. The June 11, 2013 letter noted the Policy's Other Insurance Provision and requested information regarding Plaintiffs' tender of the claim to First Mercury as well as First Mercury's coverage position. The letter notes that "Arch's coverage analysis is based on the information available to it at this time," and it further states, *inter alia*, that Arch:

> expressly reserve[s] all rights available under the Arch Policy, and at law, whether or not specifically referenced herein, including but not limited to the right to deny coverage for the Submitted Matter based on the Section 13. Other Insurance, of the General Terms & Conditions Part of the Policy, as well as upon any additional terms, conditions, exclusions, endorsements and other provisions of the Arch Policy, including statements, declarations, and omissions made in connection with the application(s) therefore, as may be found to be applicable. Arch further reserves the right to raise additional defenses or exclusions to coverage as circumstances warrant. No subsequent action, if any, that may be taken by Arch is to be construed as a waiver of any position set forth in this letter or any rights otherwise available to it, pursuant to the Arch Policy, at law, and/or in equity.

A true and correct copy of Arch's June 11, 2013 letter is attached hereto as **Exhibit N**.

45.     Notwithstanding Arch's repeated requests, Plaintiffs refused to provide Arch with a copy of First Mercury's coverage position or any information regarding First Mercury's

coverage conclusions except to inform Arch that First Mercury intended to deny coverage for the 2013 Action.  *See, e.g.*, June 21, 2013 email from Plaintiffs' counsel to Cole Trautmann of Arch, a true and correct copy of which is attached hereto as **Exhibit O**.

46.     To date, Plaintiffs still have never provided to Arch the First Mercury coverage position, aside from noting its denial, which no doubt was communicated in writing to Plaintiffs.

47.     Arch supplemented its June 11, 2013 reservation and denial letter on July 16, 2013, reaffirming Arch's position that "potential coverage for this matter is limited to Kenneth Gross only" and, as before, was "subject to a full reservation of rights."  In addition, because coverage was barred for CA Holdings and Connect America, Arch noted that potential coverage for Mr. Gross would be subject to allocation between covered and non-covered Loss.  A true and correct copy of Arch's July 16, 2013 letter is attached hereto as **Exhibit P**.

48.     In its July 16, 2013 letter, Arch further conveyed its understanding that First Mercury intended to deny coverage based on an exclusion similar to the Trademark Infringement Exclusion in the (Arch) Policy, which Arch had learned "was endorsed to the First Mercury policy as a result of prior litigation between [Plaintiffs] and Life Alert … involving issues of trademark infringement."  Accordingly, Arch requested that Plaintiffs produce "un-redacted copies of all pleadings between Life Alert [ ] and Connect America [ ] for the past ten (10) years" as well as the "First Mercury coverage position."  As in its prior June 11, 2013 letter, and as in all correspondence thereafter, Arch broadly reserved its rights in its July 16, 2013 letter.

49.     In an August 2, 2013 email from Mr. Trautmann of Arch to Mr. Gross, on which Aon was copied, Arch advised that, subject to the applicable retention, Arch would agree to reimburse ten percent (10%) of Plaintiffs' reasonable defense costs for Plaintiffs' attorneys at Morganroth & Morganroth, PLLC (the "Morganroth Firm"), pursuant to Endorsement 19, which

provides for allocation of between covered versus non-covered Loss, including Defense Costs. A true and correct copy of Arch's August 2, 2013 email is attached hereto as **Exhibit Q**.

50.	On August 28, 2013, Life Alert filed the 2013 Action First Amended Complaint. *See* Ex. H.

51.	Despite the 2013 Action First Amended Complaint being filed on August 28, 2013, Plaintiffs did not send Arch the 2013 Action First Amended Complaint until January 24, 2014, roughly five months later -- and one day *after* Plaintiffs allege Arch provided "consent" for Plaintiffs to settle the 2013 Action.  A true and correct copy of Plaintiffs' January 24, 2014 email to Arch (via Ms. Bottcher of Aon, who had also previously provided on behalf of Plaintiffs the original May 29, 2013 notice to Arch along with the original complaint) forwarding the 2013 Action First Amended Complaint to Arch for the first time is attached hereto as **Exhibit R.**

52.	In Arch's September 30, 2013 email to Plaintiffs (via Ms. Bottcher of Aon), Arch acknowledged receipt of invoices from the Morganroth Firm, and noted that Plaintiffs must first satisfy the applicable retention prior to Arch reimbursing any defense costs under the Policy. Arch further noted that because Plaintiffs had not yet satisfied the applicable retention, "any outstanding amounts owed to Morganroth are the Insured's responsibility."  A true and correct copy of Arch's September 30, 2013 email is attached hereto as **Exhibit S**.

53.	Having received from Plaintiffs none of the information Arch requested in its July 16, 2013 letter (Ex. P), such as "un-redacted copies of all pleadings between Life Alert [ ] and Connect America [ ] for the past ten (10) years" or the "First Mercury coverage position," Arch followed up on its prior requests in an email to Plaintiffs' counsel dated November 5, 2013, on which Mr. Gross and Ms. Bottcher at Aon were also copied.  In that email, Arch also requested information regarding a mandatory mediation ordered by the court in the 2013 Action,

and information regarding any settlement demands or offers to date. Arch also noted the Policy's Consent to Settlement Provision and advised that "Arch reserves its right to participate in all decisions related to the defense and possible resolution of this matter …." A true and correct copy of Arch's November 5, 2013 email to Plaintiffs' counsel is attached hereto as **Exhibit T**.

54.    Moreover, also on November 5, 2013, Arch sent another email to Mr. Gross, copying Ms. Bottcher at Aon, to once again follow up on Arch's requests for information, having received no responses from Plaintiffs. Arch explained that "the requested documentation is pertinent to our review of potential coverage available for this matter." A true and correct copy of Arch's November 5, 2013 email to Mr. Gross is attached hereto as **Exhibit U**.

55.    Arch, having received no responses to either of its November 5, 2013 emails to Plaintiffs and their counsel, again followed up regarding Plaintiffs' lack of responsiveness in a December 9, 2013 email to Ms. Bottcher of Aon. This email, once again, notes Plaintiffs' obligations under the Policy's Cooperation Clause. A true and correct copy of Arch's December 9, 2013 email is attached hereto as **Exhibit V**.

56.    In a reply email from Ms. Bottcher of Aon to Mr. Trautmann of Arch later that same day, on December 9, 2013, Ms. Bottcher advised Arch as follows:

Cole,

Lara Lewis of Connect America advised:

*I was told a settlement is being currently documented in this case.*
I will let you know more once I hear further information.

I have asked for more information and invoices.

Katie

(emphasis added).  A true and correct copy of Ms. Bottcher's December 9, 2013 email advising Arch for the first time of the settlement of this matter is attached hereto as **Exhibit W.**

57.     In a December 20, 2013 email from Ms. Bottcher of Aon to Mr. Trautmann of Arch – prior to requesting or receiving prior written consent from Arch – Ms. Bottcher further advised as follows:

> Hi Cole,
>
> _Lara Lewis has confirmed this matter settled_ but the paperwork is being finalized, she will provide once complete. She did not know the terms of the settlement.

(emphasis added).  A true and correct copy of Ms. Bottcher's December 20, 2013 email confirming the settlement of this matter is attached hereto as **Exhibit X.**

58.     Accordingly, by December 20, 2013, Ms. Lewis of Connect America had confirmed that this matter had settled, with at most only the written settlement agreement remaining to be drafted and/or executed.

59.     Under Pennsylvania law, a settlement is valid and enforceable even in the absence of a writing, and thus a valid and enforceable settlement existed as of December 20, 2013 or earlier.

60.     Despite Ms. Lewis' December 9, 2013 and December 20, 2013 confirmations that this matter had already, in fact, settled, the first request from Plaintiffs for Arch's "consent" to settle is set forth in a January 21, 2014 letter to Arch from Plaintiffs' attorneys at the Morganroth Firm.  This letter describes a "tentative resolution of this matter" based on Plaintiffs' payment of $2,500,000 to Life Alert, and encloses a copy of the proposed settlement agreement.  The letter then requests that Arch confirm the portion of the settlement that Arch will agree to cover.  A true and correct copy of Plaintiffs' January 21, 2014 letter is attached hereto as **Exhibit Y.**

61.     A review of the unexecuted settlement agreement that was enclosed with Attorney Morganroth's January 21, 2014 letter to Arch reveals the possibility of Plaintiffs recouping from Life Alert the *entirety* of Plaintiffs' $2,500,000 settlement payment to Life Alert -- based on Life Alert's ultimate recovery from the remaining or any other defendants in the 2013 Action. Yet, Plaintiffs' January 21, 2014 letter fails to mention this important fact.

62.     Moreover, Plaintiffs allege in paragraph 32 of the Complaint that "[i]n the fall of 2013, Life Alert and Plaintiffs entered into settlement negotiations …." Yet, notwithstanding the many months of alleged settlement negotiations and thus ample opportunity for Plaintiffs to have provided Arch with a reasonable opportunity to consider any requests for settlement authority, and also despite the fact that Plaintiffs still by that time had not provided Arch with the basic information Arch had requested in July of 2013, Plaintiffs saw fit to follow up their January 21, 2014 (first ever) request for Arch's consent in a January 23, 2014 letter purporting to give Arch until "the end of the week," *i.e.*, one day, to respond to Plaintiffs' consent request. A true and correct copy of Plaintiffs' January 23, 2014 letter is attached hereto as **Exhibit Z.**

63.     By this January 23, 2014 date, Plaintiffs still had not sent Arch the 2013 Action First Amended Complaint, which had been filed approximately five months earlier, on August 28, 2013.

64.     Arch responded to Plaintiffs' January 23, 2014 letter in an email that same day, noting Plaintiffs' January 21 and 23, 2014 letters advised Arch "for the first time that a tentative settlement has been reached." Arch reaffirmed its reservation of its rights regarding the Consent to Settlement Provision, advising Plaintiffs that "Arch therefore reserves all rights pursuant to its Policy, at law and/or in equity to the extent the Insured(s) did not perform in accordance with [the Consent to Settlement Provision] of the Policy" prior to Arch's receipt of the January 21 and

23, 2014 letters.  However, insofar as Plaintiff had not already settled, but were instead requesting Arch's consent to settle going forward, Arch would agree not to assert the Consent to Settlement Provision.  A true and correct copy of Arch's January 23, 2014 email is attached hereto as **Exhibit AA.**

65.      Pursuant to the unambiguous terms of Arch's January 23, 2014 email, Arch did not agree to waive the Cooperation Clause or Consent to Settle obligations of Plaintiffs as to any existing settlement already entered into by Plaintiffs without Arch's consent.  Additionally, Arch's January 23, 2014 email responded to Plaintiffs' inquiry regarding the portion of the settlement Arch would agree to cover by reaffirming Arch's previously-conveyed ten percent (10%) allocation, based on potential coverage for Gross, noting "Arch's coverage position remains unchanged and we maintain that the proposed settlement agreement falls within" the 10% allocation of potential coverage for Gross.

66.      The next morning, at 9:53 A.M. on January 24, 2014, Arch received an email from Jason Hirsch of the Morganroth Firm enclosing a letter dated January 24, 2014 in which Plaintiffs advised Arch that they would "move forward today and execute the settlement agreement" and noted their belief "that 100% of the cost of the defense of this action is attributable to the defense of Mr. Gross."  A true and correct copy of Plaintiffs' January 24, 2014 email and letter enclosed therewith is attached hereto as **Exhibit BB**.

67.      An hour later, at 10:53 A.M. on January 24, 2014, Arch received from Plaintiffs, for the first time, the 2013 Action First Amended Complaint.  *See* Ex. R, Plaintiffs' January 24, 2014 email to Arch (via Ms. Bottcher of Aon, who had also previously provided on behalf of Plaintiffs the original May 29, 2013 notice and 2013 Action Complaint).

68.     On January 27, 2014, Connect America and Mr. Gross and Life Alert stipulated to the dismissal of Connect America and Gross from the 2013 Action, with prejudice. A true and correct copy of the January 27, 2014 Stipulation to Dismiss is attached hereto as **Exhibit CC**.

69.     On February 4, 2014, U.S. District Judge John A. Kronstadt entered an order in the 2013 Action approving the parties' Stipulation and dismissing Connect America and Mr. Gross from the 2013 Action, with prejudice. A true and correct copy of the Court's February 4, 2014 Order is attached hereto as **Exhibit DD**.

70.     On February 6, 2014, Arch sent a letter to Plaintiffs (addressed to Ms. Bottcher of Aon, with copies to, *inter alia*, Ms. Lewis and the Morganroth Firm) acknowledging receipt of Plaintiffs' "email dated January 24, 2014, providing Arch with a first notice of a First Amended Complaint …." Arch's February 6, 2014 letter provides an overview of the allegations in the First Amended Complaint, and goes on to explain why multiple provisions of the Policy bar coverage for the 2013 Action, including for Mr. Gross. Specifically, Arch noted that the Interrelated Claims Provision and the Interrelated Acts Exclusion (amongst other provisions) barred coverage for claims asserted against Plaintiffs in the 2013 Action. Arch continued to further reserve all rights under the Policy. A true and correct copy of Arch's February 6, 2014 letter is attached hereto as **Exhibit EE**.

71.     On March 25, 2014, Arch received a letter from William Shea of Aon, sent on behalf of Plaintiffs, which purported to respond to Arch's February 6, 2014 letter, and requested that Arch reconsider its denial of coverage. A true and correct copy of the Plaintiffs' March 25, 2014 letter is attached hereto as **Exhibit FF**.

72.     On April 8, 2014, Arch responded to Plaintiffs' March 25, 2014 letter reaffirming its denial of coverage and further reserving its rights as follows:

Arch is currently investigating whether any misrepresentations were made in conjunction with the underwriting of this account. Amongst other information, Connect America represented that regarding the coverage(s) applied for, it had not given notice of any claim, circumstance, potential claim, or loss to an insurer. Arch reserves all rights if it is subsequently discovered that Connect America and/or Mr. Gross provided notice of the 2004 Cease and Desist and/or the 2008/2009 Litigation to any other insurer including, but not limited to, Connect America's commercial general liability insurer, First Mercury Insurance Company.

A true and correct copy of Arch's April 8, 2014 letter is attached hereto as **Exhibit GG.**

73.     On April 30, 2014, Arch received another letter from William Shea of Aon, sent on behalf of Plaintiffs, which purported to respond to Arch's April 8, 2014 letter, and which requested that Arch reconsider its denial of coverage. A true and correct copy of the Plaintiffs' April 30, 2014 letter is attached hereto as **Exhibit HH**.

74.     Arch considered Plaintiffs' April 30, 2014 letter, but concluded that none of the purported reasons or issues discussed therein did anything to undermine Arch's coverage position or to suggest that Arch's denial of coverage was incorrect.

75.     Arch responded to Plaintiffs' April 30, 2014 letter on May 27, 2014. In that letter, Arch, through coverage counsel, reaffirmed its denial of coverage and provided additional support demonstrating why there was no coverage under the Policy for the claims in the 2013 Action. In that letter, Arch stated that "[w]hile Arch would be pleased to consider any additional information you may have, we believe that the basis for Arch's denial of coverage have been clearly articulated." Arch again further reserved all rights under the Policy. A true and correct copy of Arch's May 27, 2014 letter is attached hereto as **Exhibit II.**

76.     Plaintiffs filed this coverage action against Arch on August 14, 2014.

**Based on the Plain Terms of the Policy, and Further Based on Plaintiffs' Conduct, There is No Coverage Available Under the Policy for the 2013 Action Claims**

77.     Coverage for the 2013 Action is barred and/or limited pursuant to D&O

Coverage, Section 4., Exclusion B.5., which states:

> The Insurer shall not pay Loss for any Claim against an Insured Organization:
>
> arising from, based upon, or attributable to infringement of any intellectual property rights, including, without limitation, copyrights, patents, trademarks, trade names, trade dress, service marks, or trade secrets[.]

(the "Trademark Infringement Exclusion").  Because the 2013 Action "arises from," is "based

upon," or is "attributable to" "infringement of any intellectual property rights, including, without

limitation, copyrights, patents, trademarks, trade names, trade dress, service marks, or trade

secrets," coverage for the 2013 Action is barred and/or limited.

78.     Coverage for the 2013 Action is barred and/or limited pursuant to the Policy's

General Provisions Section 10. "Interrelated Claims," which provides:

> INTERRELATED CLAIMS
>
> Regarding the Liability Coverage Parts only, all Claims arising from, based upon, or attributable to the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to be a single Claim first made on the earliest date that:
>
> A.     any of such Claims was first made, even if such date is before the Policy Period;
>
> B.      proper notice of such Wrongful Act or Interrelated Wrongful Act was given to the Insurer pursuant to Section 9.B above; or
>
> C.      notice of such Wrongful Act or Interrelated Wrongful Act was given under any prior insurance policy.

(the "Interrelated Claims Provision").  Pursuant to General Provisions Section 2. "Definitions,"

Paragraph N., the term "Interrelated Wrongful Acts" is defined as follows:

"Interrelated Wrongful Acts" means Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes.

79.     The 2013 Action is interrelated with the 2004 cease and desist letter and/or the 2008/2009 Action and/or other litigation between Life Alert and Plaintiffs, and therefore constitutes a Claim first made prior to the inception of the Policy, for which there is no coverage under the Policy, as the Insuring Agreements of the D&O Coverage provide that coverage is only provided for Claims "first made" against an Insured during the Policy Period (or Extended Reported Period).

80.     Coverage is barred and/or limited pursuant to Endorsement 11, "Prior Acts Exclusion (D&O)," which provides:

Regarding the Directors, Officers, & Organization Liability Coverage Part, it is agreed that the Insurer shall not pay Loss for any Claim against an Insured arising from, based upon, or attributable to:

1.     any Wrongful Act occurring on or prior to the Prior Wrongful Acts Date specified below; or

2.     any Interrelated Wrongful Acts thereto.

Prior Wrongful Acts Date: 12/24/10

(the "Interrelated Acts Exclusion").  Pursuant to General Provisions Section 2. "Definitions," Paragraph N., the term "Interrelated Wrongful Acts" is defined as follows:

"Interrelated Wrongful Acts" means Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes.

Because the 2004 cease and desist letter and/or the 2008/2009 Action and/or other litigation between Life Alert and Plaintiffs constitute a "Wrongful Act occurring on or prior to [December 24, 2010] or … any Interrelated Wrongful Acts thereto", coverage is precluded.

81.     Coverage is barred and/or limited pursuant to Endorsement 2, Section 23.

"Pending and Prior Litigation Exclusion," which amends D&O Coverage Section 4. A. 2, and

states that Arch:

> shall not pay Loss for any Claim against an Insured … arising from, based upon,
> or attributable to any:
>
> a.   written demand, suit or proceeding … made or initiated against an
>       Insured within the scope of any Directors and Officers Liability,
>       Employment Practices Liability or Fiduciary Liability coverage (whether
>       covered or not) on or prior to the applicable Pending and Prior Litigation
>       Date in Item 6 of the Declarations [*i.e.*, December 24, 2010 for all D&O
>       Coverage Insuring Agreements]; or
>
> b.   any Wrongful Act alleged in any such written demand, suit, proceeding or
>       audit or any Interrelated Wrongful Acts thereto[.]

(the "Prior Litigation Exclusion").

82.     The claims against Plaintiffs in the 2013 Action "arise from," are "based upon,"

or are "attributable to" the 2004 cease and desist letter and/or the 2008/2009 Action and/or other

litigation between Life Alert and Plaintiffs, which constitute a "written demand, suit or

proceeding … made or initiated against an Insured within the scope of any Directors and

Officers Liability … coverage (whether covered or not) on or prior to December 24, 2010 … [or]

any Wrongful Act alleged in any such written demand, suit, proceeding or audit or any

Interrelated Wrongful Acts thereto[.]"

83.     Coverage is barred and/or limited pursuant to General Provisions, Section 8.,

"Defense of Claims," Paragraph C:

> The Insureds shall neither admit nor assume any liability, enter into any
> settlement agreement, stipulate to any judgment, or incur any Defense Costs
> without the prior written consent of the Insurer, such consent not to be
> unreasonably withheld. The Insurer shall not be liable for any admission,
> assumption, settlement, stipulation, or Defense Costs to which it has not consented.

("Consent to Settlement Provision"). Plaintiffs violated the Consent to Settlement Provision by having settled the 2013 Action in December of 2013, prior to requesting or receiving Arch's consent to settle. Furthermore, as a result of Plaintiffs' conduct, any alleged "waiver" by Arch of the Consent to Settlement Provision is invalid and not legally enforceable.

84. Coverage is barred and/or limited pursuant to General Provisions, Section 8., "Defense of Claims," Paragraph E:

> The Insureds shall give to the Insurer all information and cooperation as the Insurer may reasonably request. Upon the Insurer's request, the Insureds shall attend proceedings, hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and conducting the defense of any Claim.

("Cooperation Clause"). Plaintiffs breached the Cooperation Clause by, *inter alia*, failing to provide relevant and material information to Arch, including un-redacted copies of all pleadings between Life Alert and Connect America for the past ten years, and the First Mercury coverage position, in addition to failing to disclose relevant information related to the defense and settlement of the 2013 Action. Additionally, Plaintiffs' breach of the Cooperate Clause includes but is not limited to Plaintiffs' failure to forward to Arch the 2013 Action First Amended Complaint until January 24, 2014 -- roughly five months after that pleading was filed.

85. Coverage is barred and/or limited pursuant to Endorsement 1, Section 11., "Other Insurance," which states:

> Coverage under this Policy shall apply only in excess of any other valid and collectible insurance or bond regardless of whether such other insurance or bond is stated to be excess, contributory, contingent or otherwise, unless such other insurance or bond is written specifically excess of this Policy.

("Other Insurance Provision"). The Policy is excess to the general liability policy issued to Plaintiffs by First Mercury and/or any other policies that may provide coverage for the 2013 Action and/or Arch is entitled to equitable apportionment in relation to same.

86. Coverage is barred and/or limited pursuant to Endorsement 19, "Insured Duty to Defend," which provides that Arch is entitled to allocate between covered and non-covered Loss, which includes Defense Costs. That Endorsement provides in relevant part:

> if the Insureds incur Loss that is only partially covered by this Policy because a Claim includes both covered and uncovered matters or because a Claim is made against both covered and uncovered parties, Loss shall be allocated between covered Loss and non-covered loss based upon the relative legal exposure of all parties to such matters.

87. Coverage is barred based on Plaintiffs' prior knowledge of or information concerning pending claims, alleged acts, errors, omissions, facts or circumstances which could have resulted in a claim prior to the issuance of the Policy. Indeed, despite having knowledge of the allegations raised in the 2004 cease and desist letter and 2008/2009 Action as well as the conduct supporting the allegations in the 2013 Action, Plaintiffs did not disclose their prior knowledge before the issuance of the Policy.

88. Arch issued the Policy (and the 2010-2011 and 2011-2012 Arch Policies before it) "in reliance upon the Application …." (Preface to the General Provisions of the Policy). Moreover, the Policy states in Endorsement 1, Section 7. "Application," as follows:

> This Policy is issued in reliance upon the material representations contained in the Application. If the Application contains material misrepresentations or omissions made with intent to deceive or that materially affect the acceptance of the risk or the hazard assumed by the Insurer, this Policy shall not afford any coverage for any Insured who knew at the inception of the Policy Period of the facts that were misrepresented in, or were omitted from, the Application. *The Application shall be deemed attached to, and incorporated into, this Policy.*

(emphasis added).

      89.     The Application for the Policy further states, *inter alia*, as follows:

> **IT IS AGREED THAT ANY CLAIM ARISING FROM, BASED UPON, OR ATTRIBUTABLE TO ANY ACTUAL OR ALLEGED ACT, ERROR, OMISSION, FACT OR CIRCUMSTANCE OF WHICH ANY SUCH PERSON OR ENTITY HAS ANY KNOWLEDGE OR INFORMATION WILL BE EXCLUDED FROM COVERAGE UNDER THE PROPOSED INSURANCE.**

Because Plaintiffs, as well as Lara Lewis and/or Lynda Delaney, did not disclose their prior knowledge of the Life Alert allegations in the Application and/or the related materials and communications submitted by Plaintiffs to Arch, Plaintiffs are not entitled to coverage under the Policy.

      90.     Upon information and belief, in the absence of Arch possessing the final executed settlement agreement between Plaintiffs and Life Alert regarding the 2013 Action, and based upon the terms of the draft settlement agreement currently in Arch's possession, it is possible that, based on the relief Life Alert obtains against the remaining and/or any other defendants in the 2013 Action, Plaintiffs will be reimbursed by Life Alert for up to the entire amount of Plaintiffs' settlement payment made in connection with the 2013 Action. Accordingly, Plaintiffs may suffer no Loss, as defined in the Policy, and/or damages and Plaintiffs' coverage demand is premature. Therefore, Plaintiffs' complaint is not ripe for adjudication.

## <u>COUNT I -- DECLARATORY JUDGMENT</u>

      91.     Arch hereby incorporates by reference the allegations of the foregoing paragraphs 1 through 90 of Arch's Counterclaim, as well as Arch's Answer and Affirmative Defenses to the Complaint, as if fully set forth herein.

92.     Because the parties are in disagreement as to whether there is coverage for the claims asserted against Plaintiffs in the 2013 Action, an actual controversy exists between the parties regarding their rights, duties and obligations in connection with the Policy.

93.     Arch is entitled to a judicial declaration that there is no coverage available under the Policy for the claims asserted in the 2013 Action pursuant to the following provisions of the Policy, including all terms, definitions, and provisions incorporated therein, as set forth in greater detail above in Arch's Affirmative Defenses to the Complaint:

A.     the Trademark Infringement Exclusion set forth in D&O Coverage, Section 4., Exclusion B.5;

B.     the Interrelated Claims Provision set forth in the Policy's General Provisions Section 10;

C.     the Interrelated Acts Exclusion set forth in Endorsement 11;

D.     the Prior Litigation Exclusion set forth in Endorsement 2, Section 23;

E.     the Consent to Settlement Provision set forth in General Provisions, Section 8, Paragraph C;

F.     the Cooperation Clause set forth in General Provisions, Section 8, Paragraph E;

G.     the Other Insurance Provision set forth in Endorsement 1, Section 11;

H.     the Allocation Provision set forth in Endorsement 19;

I.     the Prior Knowledge Provision set forth in Endorsement 1, Section 7 and the 2012-2013 Application.

94.     Furthermore, Arch is entitled to a judicial declaration that there is no coverage for the 2013 Action based on any other applicable terms, conditions and exclusions of the Policy and applicable law, including the "known loss" doctrine and ripeness.

WHEREFORE, Arch requests that judgment be entered in its favor and against Plaintiffs, and Arch asks this Court to:

A.      Declare the rights and liabilities of the parties hereto with respect to the Policy;

B.      Declare that there is no coverage available under the Policy for the reasons set forth above;

C.      Award Arch all costs and expenses incurred in the matter, and grant any such other and further relief which this Court deems just and proper.

Dated: September 17, 2014

HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER

By: /s/ Ronald P. Schiller
     Ronald P. Schiller (Pa. I.D. No. 41357)
     Daniel J. Layden (Pa. I.D. No. 80615)
     Matthew N. Klebanoff (Pa. I.D. No. 309045)
     One Logan Square, 27th Floor
     Philadelphia, Pennsylvania 19103
     (215) 568-6200
     (215) 528-0300 facsimile
     rschiller@hangley.com
     dlayden@hangley.com
     mklebanoff@hangley.com

## CERTIFICATE OF SERVICE

I, Ronald P. Schiller, hereby certify that on September 17, 2014 the foregoing Answer

and Counterclaim of Arch Insurance Company was filed with the Court's electronic filing

system, which constitutes service on all of the following counsel of record:

> John N. Ellison, Esquire
> Matthew D. Rosso, Esquire
> Reed Smith LLP
> Three Logan Square
> 1717 Arch Street, Suite 3100
> Philadelphia, PA 19103
> jellison@reedsmith.com
> mrosso@reedsmith.com
>
> Jeffrey B. Morganroth, Esquire
> Matthew R. Cameron, Esquire
> Morganroth & Morganroth, PLLC
> 344 N. Old Woodward Ave., Suite 200
> Birmingham, MI 48009
> jmorganroth@morganrothlaw.com
> mcameron@morganrothlaw.com
>
> *Attorneys for Plaintiffs*

/s/ Ronald P. Schiller