**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CONNECT AMERICA HOLDINGS, LLC, | : | |
| CONNECTAMERICA.COM, LLC, *and* | : | |
| KENNETH GROSS, | : | CIVIL ACTION |
| | : | |
| *Plaintiffs,* | : | NO. 14-4784-TJS |
| | : | |
| v. | : | |
| | : | |
| ARCH INSURANCE COMPANY, | : | |
| | : | |
| *Defendant.* | : | |

**OPPOSITION TO ARCH INSURANCE COMPANY'S MOTION TO EXCLUDE
THE OPINIONS OF BERND G. HEINZE
PURSUANT TO *DAUBERT V. MERRELL DOW***

**I.    INTRODUCTION**

Arch asks this Court to exclude as "unqualified" and "unfit" the opinions of Plaintiffs' expert, Bernd G. Heinze. Mr. Heinze is qualified and his opinions are properly before this Court in the breach of contract portion of this case.

Mr. Heinze meets the "qualification" requirement. He has thirty-two years of experience involving all types of insurance, including directors and officers ("D&O") insurance. He has represented insurance companies in all types of coverage disputes, was Chief National Litigation Counsel for one of the largest Philadelphia-based insurance companies, and eventually started his own company that provides consulting services on everything relating to insurance. He has long served as the executive director of an international insurance and professional trade association, lectured and presented all across the country at colleges and universities and at industry conferences, and has testified before the U.S. House of Representatives. Mr. Heinze has knowledge far greater than the average layman on issues involving interrelated wrongful acts,

trademark infringement exclusions and allocation, which is all that is required to meet the "qualification" requirement.

Arch also claims that Mr. Heinze's opinions fail the "fit" requirement because in Arch's view, his opinions somehow relate exclusively to Arch's bad faith conduct, which is not yet before the Judge. While Arch is correct that Mr. Heinze believes that Arch acted in bad faith when handling this claim, his opinions do not relate exclusively to bad faith and Plaintiffs have no intention of having Mr. Heinze testify that Arch acted in bad faith during the breach of contract trial. Had Arch bothered to inquire about any of Mr. Heinze's opinions during his deposition – rather than solely try to paint him as a bad faith expert – it would have discovered that he will provide opinions concerning "industry custom and practice" relating to critical issues in this case – namely, interrelatedness, trademark infringement exclusions, and allocation – and whether Arch acted in accordance with industry custom and practice with its approach to certain related policy provisions. Having failed to explore any of Mr. Heinze's opinions, Arch cannot now sit back and claim that all of his opinions relate only to bad faith.

For these reasons, and as more fully discussed below, this Court should deny Arch's motion to exclude Mr. Heinze's opinions.

## II. ARGUMENT

### A. MR. HEINZE IS FULLY QUALIFIED TO TESTIFY AT TRIAL.

Arch claims that Mr. Heinze's opinions should be excluded because he allegedly "lacks the experience and qualifications to offer [a] reliable expert opinion on the issues of trademark law or D&O coverage currently before the Court." See Arch's Motion to Exclude at 5 (Dkt. No. 45-2). Arch is wrong.

Rule 702 provides that:

> A witness who is *qualified* as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]

Fed. R. Evid. 702 (emphasis added).  The Third Circuit has stressed that this "qualification" requirement be construed "liberally":

> Rule 702 requires the witness to have "specialized knowledge" regarding the area of testimony. The basis of this specialized knowledge "can be practical experience as well as academic training and credentials." We have interpreted the specialized knowledge requirement liberally, and have stated that this policy of liberal admissibility of expert testimony "extends to the substantive as well as the formal qualification of experts." However, "at a minimum, a proffered expert witness ... must possess skill or knowledge greater than the average layman. . . ."

*Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000), *quoting Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998).  Pennsylvania district courts have echoed this very standard:

> As to the first requirement – qualification – the Court of Appeals for the Third Circuit has eschewed imposing overly rigorous requirements of expertise and [has] been satisfied with more general qualifications.  Rule 702's liberal policy of admissibility extends to the substantive as well as the formal qualification of experts.  Thus, an expert can qualify based on a broad range of knowledge, skills, training and experience.

*Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 410 F. Supp. 2d 417, 420 (W.D. Pa. 2006) (internal quotations and citations omitted).

Here, the Court does not even need to construe the "qualification" requirement liberally to find Mr. Heinze qualified to testify.  He has extensive experience in the insurance industry generally and in D&O insurance specifically.  In fact, Mr. Heinze explained in his deposition that he has "*[t]hirty-two years* of experience in dealing with directors and officers policies and claims." Heinze Dep. 107:19-21 (emphasis added).[1]  Arch ignores that testimony in its motion.

---

[1] The Deposition Transcript of Bernd G. Heinze is attached as Exhibit C to Arch's Motion to Exclude (Dkt. No. 45-5).

From 1983 to 1997, Mr. Heinze practiced law at two separate law firms, where he represented insurance companies, agents and brokers in coverage disputes involving all types of insurance policies, including D&O policies. Heinze Dep. 35:20-36:12. Mr. Heinze has described his law firm experience as follows:

> I not only researched, read and developed an understanding of insurance industry customs, standards and claim and litigation management guidelines in order to represent the respective insurance company, agent and broker clients and their respective practices, and to draft claim and litigation management guidelines, and policies, insuring agreements, endorsements and exclusions on a variety of lines of business, but actually witnessed the implementation and application of these customs and standards in the claims handling I observed and experienced as defense counsel. My understanding and experience included individual property, casualty and professional liability lines of business under primary, excess and umbrella insurance policies.

Report at 4.[2]

From 1997 to 2000, he served as Vice President and Chief National Litigation Counsel at Reliance Insurance Company, where he helped "develop, draft and implement claims and litigation management guidelines" and to "conduct claims audits and design and provide training strategy sessions" under all types of insurance policies, including D&O policies. Report at 5.

Since 2000, Mr. Heinze has owned the Heinze Group, LLC (f/k/a Beacon Management Group, Inc.), which provides consulting services on everything relating to all types of insurance, including insurance claims, litigation management, claims adjusting, and audits. *Id.* at 6.

Since 2001, he also has served as executive director the American Association of Managing General Agents ("AAMGA"), a 487-member international insurance and professional trade association, as well as its University Education Foundation. His responsibilities as executive director of AAMGA include staying abreast of industry customs, standards and practices, review and publishing of White Papers relating to the entire insurance industry,

---

[2] The Report of Bernd G. Heinze, Esq. is attached as Exhibit B to Arch's Motion to Exclude (Dkt. No. 45-4).

planning and executing insurance industry meetings, conventions and trade shows, liaising with state and federal regulators and legislators, and serving as editor of the "Wholesale Insurance News" magazine, among other things. *Id.* at 7. As executive director of the AAMGA's Education Foundation, Mr. Heinze manages the tracked curriculum and continuing education classes on claims and underwriting issues. These sessions, as well as Mr. Heinze himself, are approved and certified by all 50 state insurance departments. *Id*.

In addition, Mr. Heinze lectures and teaches regularly throughout the year across the country and abroad at various colleges and universities. *Id*. He also testifies regularly at quarterly meetings of the National Association of Insurance Commissioners (NAIC), National Conference of Insurance Legislators (NCOIL), and National Conference of State Legislators (NCSL) on a variety of matters pertaining to the insurance marketplace. *Id*. He has testified and offered supplemental information on legislation relating to insurance, among other things, before the U.S. House of Representatives. *Id.* at 7-8.

In its motion, Arch not only overlooks all of this experience, and his D&O insurance experience specifically, it also neglects to mention Mr. Heinze's experience with claims for coverage arising out of trademark infringement litigation under the Lanham Act. During his deposition, Mr. Heinze explained:

> In the activities that we do currently [at the Heinze Group], we will do audits from time to time, insurance companies that have Lanham Act or similar policies like the corporate canopy policy that Arch had in this case, to analyze whether the proper activities are being undertaken, if the claims manual requirements are being followed, if best practices are being engaged in. So from a coverage standpoint, that is engaged in currently. And while I was at the Wilson Elser firm, there was, from time to time, actions on which coverage advice was given to various insurance companies – I do not remember the names of them – with regard to Lanham Act or other trademark-type violations that were contained within either first notices of claims when they came in or on the actual lawsuits themselves.

> And while I was at Reliance Insurance Company, any of those types of coverage issues that related to trademark-type issues that would be included in the claims that we would indemnify or provide defense on, I also became involved in them from time to time.

Heinze Dep. at 36:20-38:6.

That only one of Mr. Heinze's previous 48 expert retentions relate to D&O insurance – a fact that Arch harps on in its motion – is meritless.[3] The basis of an expert's "specialized knowledge" may derive from practical experience as well as academic training and credentials. *See Montgomery v. Mitsubishi Motors Corp.*, 448 F. Supp. 2d 619, 627 (E.D. Pa. 2006) (recognizing specialized knowledge "may include practical experience as well as academic training and credentials."); *Kerrigan v. Maxon Indus., Inc.*, 223 F. Supp. 2d 626, 635 (E.D. Pa. 2002) (holding Rule 702 "is flexible in allowing a variety of experience and training, other than and in addition to formal academic training, to serve as the basis for expert witness qualification.").

Clearly, Mr. Heinze's thirty-two years' worth of D&O insurance knowledge – which derives from his prior work experience, academic training and credentials – meet the liberal minimum qualifications. *See Elcock*, 233 F.3d at 741 ("a proffered expert witness . . . must possess skill or knowledge greater than the average layman. . . .") *quoting Waldorf*, 142 F.3d at 625; *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 809 (3d Cir. 1997) (proposed experts do not need to be "best qualified" or have specialization that is "most appropriate"; "level of the expert's expertise goes to credibility and weight, not admissibility").

---

[3] Notably, Mr. Heinze's one prior expert retention related to a D&O insurance coverage dispute that specifically concerned whether two actions were interrelated. Heinze Dep. 42:24-44:15. Yet, in that case, and every other case where he has been retained as an expert, Mr. Heinze's opinions and testimony have never been excluded by a court. Heinze Dep. 77:12-19.

### B. MR. HEINZE'S OPINIONS "FIT" THE BREACH OF CONTRACT PHASE OF THE LITIGATION.

In its attempt to paint Mr. Heinze as solely a bad faith expert, Arch did not ask a single question during his deposition relating to his opinions concerning "industry custom and practice" or why he believed Arch had breached the insurance contract. Arch did this even though Mr. Heinze's report is replete with references to "industry custom and practice" and his opinions that Arch breached the policy's interrelatedness, trademark infringement, and allocation provisions and/or exclusions. Had Arch bothered to ask any questions concerning any of Mr. Heinze's opinions, it would have learned that his opinions are three-fold. First, he will provide opinions concerning the industry custom and practice with respect to how insurers apply interrelatedness, trademark infringement exclusions, and allocation. Second, he will provide opinions concerning how and why, based on that industry custom and practice, Arch breached its own policy with respect to interrelatedness, the trademark infringement exclusion, and allocation. He will provide opinions that Arch's handling of this claim was unreasonable and amounts to bad faith only in the bad faith phase of this litigation, if necessary.

Mr. Heinze could not possibly opine on whether Arch acted in bad faith without first explaining industry custom and practice and why he believes that Arch breached its policy. That Arch disagrees with Mr. Heinze's ultimate opinion that Arch acted in bad faith is not enough to strike his opinions relating to industry custom and practice and Arch's breach of the policy.

### III. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court deny Arch's Motion to Exclude the Opinions of Bernd G. Heinze Pursuant to *Daubert v. Merrell Dow*.


Dated:  May 15, 2015                                  Respectfully submitted,

                                                      Reed Smith LLP


                                                          s/Matthew D. Rosso
                                                      John N. Ellison (I.D. No. 51098)
                                                      Jay M. Levin (I.D. No. 34561)
                                                      Matthew D. Rosso  (I.D. No. 203696)
                                                      Three Logan Square
                                                      1717 Arch Street, Suite 3100
                                                      Philadelphia, PA 19103
                                                      T:  (215) 851-8100
                                                      F:  (215) 851-1420
                                                      jellison@reedsmith.com
                                                      jmlevin@reedsmith.com
                                                      mrosso@reedsmith.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused to be filed Plaintiff's Opposition to Arch Insurance Company's Motion to Exclude the Opinions of Bernd G. Heinze Pursuant to *Daubert v. Merrell Dow* Motion using the Court's ECF system which will send notice of such filing to all counsel of record:

>Ronald P. Schiller, Esq.
>Daniel J. Layden, Esq.
>Matthew N. Klebanoff, Esq.
>HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
>One Logan Square, 27th Floor
>Philadelphia, PA 19103
>T:  (215) 496-7057
>F:  (215) 568-0300
>rschiller@hangley.com
>dlayden@hangley.com
>mklebanoff@hangley.com


Dated: May 15, 2015                                         s/Matthew D. Rosso